IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Action No. 5:18-CV-589\_\_\_\_\_

| | |
|---|---|
| COMMON CAUSE; NORTH CAROLINA DEMOCRATIC PARTY; PAULA ANN CHAPMAN; HOWARD DUBOSE JR; GEORGE DAVID GAUCK; JAMES MACKIN NESBIT; DWIGHT JORDAN; JOSEPH THOMAS GATES; MARK S. PETERS; PAMELA MORTON; VIRGINIA WALTERS BRIEN; JOHN MARK TURNER; LEON CHARLES SCHALLER; REBECCA HARPER; LESLEY BROOK WISCHMANN; DAVID DWIGHT BROWN; AMY CLARE OSEROFF; KRISTIN PARKER JACKSON; JOHN BALLA; REBECCA JOHNSON; AARON WOLFF; MARY ANN PEDEN-COVIELLO; KAREN SUE HOLBROOK; KATHLEEN BARNES; ANN MCCRACKEN; JACKSON THOMAS DUNN, JR.; ALYCE MACHAK; WILLIAM SERVICE; DONALD RUMPH; STEPHEN DOUGLAS MCGRIGOR; NANCY BRADLEY; VINOD THOMAS; DERICK MILLER; ELECTA E. PERSON; DEBORAH ANDERSON SMITH; ROSALYN SLOAN; JULIE ANN FREY; LILY NICOLE QUICK; JOSHUA BROWN; CARLTON E. CAMPBELL SR., <br><br> Plaintiffs, <br><br> v. <br><br> REPRESENTATIVE DAVID R. LEWIS, IN HIS OFFICIAL CAPACITY AS SENIOR CHAIRMAN OF THE HOUSE SELECT COMMITTEE ON REDISTRICTING; SENATOR RALPH E. HISE, JR., IN HIS OFFICIAL CAPACITY AS CHAIRMAN OF THE SENATE COMMITTEE ON REDISTRICTING; SPEAKER OF THE NORTH CAROLINA HOUSE OF | **NOTICE OF REMOVAL** <br> 28 U.S.C. §§1441, 143(2) & 1446 |

REPRESENTATIVES TIMOTHY K. MOORE; )
PRESIDENT PRO TEMPORE OF THE )
NORTH CAROLINA SENATE PHILIP E. )
BERGER; THE STATE OF NORTH )
CAROLINA; THE NORTH CAROLINA )
STATE BOARD OF ELECTION AND )
ETHICS ENFORCEMENT; JOSHUA )
MALCOLM, CHAIRMAN OF THE NORTH )
CAROLINA STATE BOARD OF ELECTIONS )
& ETHICS ENFORCEMENT; KEN )
RAYMOND, SECRETARY OF THE NORTH )
CAROLINA STATE BOARD OF ELECTIONS )
& ETHICS ENFORCEMENT; STELLA )
ANDERSON, MEMBER OF THE NORTH )
CAROLINA STATE BOARD OF ELECTIONS )
& ETHICS ENFORCEMENT; DAMON )
CIRCOSTA, MEMBER OF THE NORTH )
CAROLINA STATE BOARD OF ELECTIONS )
& ETHICS ENFORCEMENT; STACY )
"FOUR" EGGERS IV, MEMBER OF THE )
NORTH CAROLINA STATE BOARD OF )
ELECTIONS & ETHICS ENFORCEMENT; )
JAY HEMPHILL, MEMBER OF THE NORTH )
CAROLINA STATE BOARD OF ELECTIONS )
& ETHICS ENFORCEMENT; VALERIE )
JOHNSON, MEMBER OF THE NORTH )
CAROLINA STATE BOARD OF ELECTIONS )
& ETHICS ENFORCEMENT;  JOHN LEWIS, )
MEMBER OF THE NORTH CAROLINA )
STATE BOARD OF ELECTIONS & ETHICS )
ENFORCEMENT; ROBERT CORDLE, )
MEMBER OF THE NORTH CAROLINA )
STATE BOARD OF ELECTIONS & ETHICS )
ENFORCEMENT, )
 )
        Defendants. )
_____

TO:    THE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE
         EASTERN DISTRICT OF NORTH CAROLINA

Defendants Representative David R. Lewis, Senator Ralph E. Hise, Jr., Speaker Timothy K. Moore, President Pro Tempore Philip E. Berger, and the State of North Carolina[1] ("State Defendants"), in accordance with the requirements of 28 U.S.C. § 1441, 1443(2), and 1446, hereby give notice and remove to this court the civil action bearing the Case No.: 18-CVS-14001, which is now pending in the General Court of Justice, Superior Court Division, Wake County, North Carolina.

In support of this Notice of Removal, State Defendants show the Court:

1. Plaintiffs initiated this action in the General Court of Justice, Superior Court Division, Wake County, North Carolina, Civil Action No. 18-CVS-14001, on November 13, 2018, by filing the Complaint. Plaintiffs filed an Amended Complaint on December 7, 2018.

2. The State Defendants accepted service of the original Summons and Complaint on November 20, 2018. A complete copy of all process, pleadings, and orders served upon Defendant is attached as **Exhibit 1** to this Notice of Removal. 28 U.S.C. § 1446(a). These documents constitute the pleadings to date.

3. As required by 28 U.S.C. § 1446(b), this Notice of Removal is filed with this Court within thirty (30) days of service of process on the State Defendants.

4. The Complaint purports to allege claims under the North Carolina Constitution.

---

[1] Pursuant to N.C. Gen. Stat. § 1-72.2, the legislative branch of North Carolina state government is considered the "State of North Carolina" in actions challenging statutes enacted by the North Carolina General Assembly along with the executive branch of state government.

5. Nevertheless, removal here is appropriate on two separate and independently sufficient bases.

**A. Section 1443(2)**

6. Removal is appropriate under 28 U.S.C. § 1443(2), which provides for removal of state-court actions against state officials "for refusing to do any act on the ground that would be inconsistent" with "any [federal] law providing for equal rights…."

7. This provision is satisfied, and removal is appropriate, where there is "a colorable conflict between state and federal law." *White v. Wellington*, 627 F.2d 582, 587 (2d Cir. 1980) (quotations omitted). The state official's federal-law defense need not ultimately be meritorious so long as there is a colorable conflict between the official's federal-law duties under equal-rights law and the alleged state-law duties. *See, e.g.*, *Alonzo v. City of Corpus Christi*, 68 F.3d 944, 946 (5th Cir. 1995); *New Haven Firefighters Local 825 v. City of New Haven*, 2004 WL 2381739, at *1 (D. Conn. Sept. 28, 2004).

8. Section 2 of the Voting Rights Act ("VRA") applies to the entire State of North Carolina. VRA § 2 is a federal-law provision providing for equal rights.

9. The Equal Protection Clause of the Fourteenth Amendment applies to the entire State of North Carolina. The Equal Protection Clause is a federal-law provision providing for equal rights.

10. The Fifteenth Amendment's guarantee of racial equality in voting applies to the entire state of North Carolina. The Fifteenth Amendment is a federal-law provision providing for equal rights.

11. A colorable conflict between state constitutional redistricting requirements and the dictates of the Voting Rights Act and Equal Protection Clause supports removal under Section 1443(2). *Cavanagh v. Brock*, 577 F. Supp. 176, 180 (E.D.N.C. 1983).

12. Representative David R. Lewis is a state official covered under Section 1443(2). Representative Lewis is Senior Chairman of the House Select Committee on Redistricting. Representative Lewis has been sued in this matter in his official capacity for violating alleged state-law requirements related to redistricting. But, as described below, Representative Lewis's relevant actions were undertaken pursuant to federal law that protects racial equality in voting.

13. Senator Ralphs E. Hise, Jr. is a state official covered under Section 1443(2). Senator Hise is Chairman of the Senate Committee on Redistricting. Senator Hise has been sued in this matter in his official capacity for violating alleged state-law requirements related to redistricting. But, as described below, Senator Hise's relevant actions were undertaken pursuant to federal law that protects racial equality in voting.

14. Speaker Timothy K. Moore is a state official covered under Section 1443(2). Speaker Moore is Speaker of the House of Representatives. Speaker Moore has been sued in this matter in his official capacity for violating alleged state-law requirements related to redistricting. But, as described below, Speaker Moore's relevant actions were undertaken pursuant to federal law that protects racial equality in voting.

15. President Philip E. Berger is a state official covered under Section 1443(2). President Berger is President Pro Tempore of the Senate. President Berger has been sued in this matter in his official capacity for violating alleged state-law requirements related to

redistricting. But, as described below, President Berger's actions were undertaken pursuant to federal law that protects racial equality in voting.

16. The State Defendants have all been sued in their official capacities for their roles in drawing, enacting, providing for administering, preparing for, and/or moving forward with elections under State House and Senate districts created in districting maps that were enacted by the North Carolina General Assembly in 2017. Plaintiffs claim that the 2017 maps violate provisions of the North Carolina Constitution. The Prayer for Relief asks this Court to enjoin the State Defendants from taking these actions and to require the State Defendants to re-draw the 2017 plans or, alternatively, seize the State Defendants' legislative power and redistrict the state itself.

17. Besides being directly sued and identified as parties to be enjoined against enforcing the 2017 plans and to be enjoined to create new plans dramatically different from the 2017 plans, the State Defendants are identified by state law as officers entitled to defend state law in court challenges, both when the North Carolina House of Representatives or North Carolina Senate are named as parties and as intervenors. N.C. Gen. Stat. § 1-72.2.

18. Both the actions Plaintiffs demand and their theories of relief create direct conflicts with federal law guaranteeing equal protection—namely, the Voting Rights Act and the Equal Protection Clause of the Fourteenth Amendment, and the Fifteenth Amendment.

### 1. The Fourteenth Amendment, Fifteenth Amendment, and the Voting Rights Act

19. One conflict arises because many of the legislative districts challenged are performing minority crossover districts, and Plaintiffs demand that the racial composition of these districts be dramatically altered. In particular, Plaintiffs' Amended Complaint identifies multiple districts as containing a high percentage of Democratic Party constituents. They refer to these districts as "packed," without defining that term. But, in North Carolina, there is a strong correlation between racial and political identity, so removing Democratic Party constituents from these districts will necessary reduce the percentage of African American voting-age persons. Accordingly, the asserted state-law duties would require the State Defendants to intentionally dismantle crossover districts.

20. For example, paragraphs 128 and 129 of the Amended Complaint attack House Districts 2 and 32 and claim that House District 32 is an "overwhelmingly Democratic district" and, by consequence, House District 2 is "a Republican-leaning district."

21. But the State Defendants intend to defend this charge, *inter alia*, by presenting evidence demonstrating that House District 32 is a minority "crossover" district.

22. Other districts that likely qualify as crossover (or coalition) districts that are challenged in this case or in county groupings with districts challenged in this case include: House Districts 8, 25, 32, 33, 38, 42, 43, 47, 58, 60, 71, 72, 88, 99, 101, 102, 107 and Senate Districts 14, 28, 32, 38, and 40.

23. Intentionally dismantling crossover or coalition districts would violate the State Defendants' obligations under federal law guaranteeing equal rights for two separate reasons.

24. First, intentionally drawing lines "to destroy otherwise effective crossover districts" violates the Fourteenth and Fifteenth Amendments. *Bartlett v. Strickland*, 556 U.S. 1, 24 (2009). Plaintiffs' demand that the state adjust the Democratic vote share of minority crossover districts necessarily would require intentionally destroying performing crossover districts in direct conflict with these Constitutional provisions.

25. Second, a state may satisfy its obligation under VRA § 2 by demonstrating that crossover districts allow minority groups an equal opportunity to elect their preferred candidates of choice. *Strickland*, 556 U.S. at 24 ("States can—and in proper cases should—defend against alleged § 2 violations by pointing to crossover voting patterns and to effective crossover districts.") Although VRA § 2 cannot be used as a sword to require states to create crossover districts, the Supreme Court has made clear that states may create crossover or coalition districts "as a matter of legislative choice or discretion" in order "to choose their own method of complying with the Voting Rights Act." *Id.* at 23. Thus, the existence of performing crossover or coalition districts is a valid *shield* against a Voting Rights Act claim that might otherwise by meritorious. Creating House District 32 (and other crossover districts) was therefore a lawful means of complying with the Voting Rights Act and precluding a valid claim of liability under a law guaranteeing equality.

26. Plaintiffs' theory of state law—which the State Defendants contest—would require the State Defendants to drop the African American voting-age population in House

District 32 (and other crossover districts) and thereby dismantle the district. It would no longer be a crossover district.

27. Importantly, Plaintiffs are *not* contending that these districts should be a majority-minority districts. To the contrary, they demand that African American voting-age population be *removed* from the districts. Plaintiffs demand that minority voting-age population be removed from crossover districts would dismantle crossover districts and place the State Defendants in the position of being required to follow either Plaintiffs' erroneous view of state law or the dictates of the Voting Rights Act.

28. The State Defendants' contention that many districts challenged in this case preserve African American voting strength and, accordingly, equality in voting as guaranteed by the Fourteenth and Fifteenth Amendment and the VRA is a defense to Plaintiffs' state-law challenge. Under Section 1443(2), the defense need not be proved as a factual matter at this time. The defense is colorable and supports removal.

### 2. The Equal Protection Clause

29. A conflict also arises between Plaintiffs' asserted state-law theories and Defendants' obligations under federal law because affording Plaintiffs the relief they request would require intentionally dismantling districts that were found by a federal court to be necessitated by the Equal Protection Clause of the federal Constitution.

30. The General Assembly enacted the legislative districts challenged in this action in response to a federal court's order requiring new districts to comply with the Equal Protection Clause. The federal litigation challenged 28 House and Senate districts on the theory that they violated the equal-protection guarantee of racial neutrality in voting.

That case alleged that the former districts, drawn in 2011, were drawn with "predominant" racial intent. A United States District Court found liability as to all challenged districts under this theory. It subsequently issued a mandate that the General Assembly redraw districts to comply with the Equal Protection Clause.

31. The General Assembly dutifully complied by passing the 2017 plans that are challenged in this case. Those plans changed dozens of districts in order to comply with the Equal Protection Clause. A small subset of those remedial districts were challenged during the federal remedial phase, and the United States District Court commissioned a special master to address deficiencies as to those districts in response to that challenge.

32. On January 21, 2018, the United States District Court issued an order directing the State of North Carolina and other defendants to implement the state legislative plan adopted by the North Carolina General Assembly in August 2017, as modified by the Special Master retained by the Court in that case, and adopted in full by the Court, for future legislative elections. *Covington v. North Carolina*, 283 F.Supp.3d 410, 458 (M.D.N.C. 2018). The federal court ordered that the *entire* plan, as modified by the Special Master, be used for "future North Carolina legislative elections." *Id.*[2] The State Defendants are bound by this order. The State Defendants complied with that order for the 2018 election and intend to comply with that order for the 2020 election. After the 2020 election, the decennial census will require the redrawing of the legislative plans.

---

[2] The federal three-judge court's order adopting House districts drawn for Wake County was vacated by the Supreme Court. *North Carolina v. Covington,* 138 S.Ct. 2548 (2018). The Supreme Court found that the federal-three-judge court lacked jurisdiction to redraw portions of the state not implicated in the equal-protection challenge.

33. Plaintiffs' lawsuit is a direct attack on the 2017 plans that the General Assembly enacted under the direction, and with the ultimate approval, of the United States District Court.

34. Plaintiffs' Prayer for Relief demands that the State Defendants cease using the 2017 Plans. That creates a direct conflict with the United States District Court's order *requiring* the State Defendants to use the 2017 Plans, and that order was issued pursuant to the United States District Court's power to enforce the Equal Protection Clause. That is a stark conflict between the State Defendants' federal-law obligations under equal-rights law and Plaintiffs' asserted state-law claims.

35. Plaintiffs ask that districts drawn as equal-protection remedies be dismantled. But intentionally dismantling these districts, besides conflicting with the federal-court order mandating that the General Assembly use all the enacted districts (as modified by the special master) in future elections, would violate the equal-protection prohibition on intentionally "cracking" communities composed of racial minorities. This too is a direct conflict between the alleged state-law duties Plaintiffs assert (wrongly, in the State Defendants' view) and the dictates of a federal law guaranteeing equality. *Strickland*, 556 U.S. at 24 ("And if there were a showing that a State intentionally drew district lines in order to destroy otherwise effective crossover districts, that would raise serious questions under both the Fourteenth and Fifteenth Amendments."); *see also Reno v. Bossier Parish School Bd.*, 520 U. S. 471, 481–482 (1997).

36. Moreover, the State Defendants intend to defend Plaintiffs' charge, *inter alia*, by presenting evidence demonstrating that the challenged districts were created as remedial

districts in response to the United States District Court's order and to avoid the charge that racial intent "predominated" in the redistricting.

37. In this regard, the U.S. Supreme Court has held that, where a state "has articulated a legitimate political explanation for its districting decision," that legitimate political explanation is a defense to an assertion of improper racial motive. *Easley v. Cromartie*, 532 U.S. 234, 242 (2001). A "legitimate political explanation" includes the use of traditional redistricting principles such as compactness, contiguity, respect for political subdivisions or communities, incumbency protection, partisan affiliation, and political data in drawing a district. *See generally Id*; *see also Alabama Legislative Black Caucus v. Alabama,* 135 S.Ct. 1257, 1270 (2015).

38. The Amended Complaint in this matter alleges that members of the General Assembly articulated numerous explanations for the districting decisions. The State Defendants intend to respond to this charge by presenting evidence that the need to articulate a political basis for districting decisions was done to avoid the appearance and actuality of racially predominant redistricting. Indeed, the federal-court decision that identified violations of the Equal Protection Clause *criticized* the General Assembly for failing to formally articulate a political basis for the districting decisions and concluded that race "predominated."

39. The State Defendants' contentions that many districts challenged in this case were drawn to cure federal-court identified violations of the Equal Protection Clause, that the districts are currently being implemented by direct command of the United States District Court pursuant to its power to remedy violations of the Equal Protection Clause,

and that the political decisions made to draw the districts were intended to avoid the appearance and actuality of racial predominance are defenses to the asserted state-law duties Plaintiffs have concocted. Under Section 1443(2), these defenses need not be proved as a factual matter at this time. The defenses are colorable and support removal.

**B.     Section 1441(a)**

40.     The State Defendants also are entitled to remove this action to this Court because plaintiffs' Complaint raises federal questions "arising under the laws . . . of the United States," so that this Court has original jurisdiction over the claim. 28 U.S.C. § 1441(a). Federal jurisdiction is proper if plaintiff's demand "necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 28 (1983). In service of their claims which would violate the federal civil rights of African American voters, Plaintiffs request the state court in this matter to violate the federal constitutional rights of registered Republicans and voters for Republican candidates under the First and Fourteenth Amendments to the United States Constitution. The relief sought by Plaintiffs has the intent and effect to benefit registered Democrats and voters for Democratic candidates at the expense of registered Republicans and voters for Republican candidates. Plaintiffs seek an interpretation of the North Carolina Constitution that will necessarily result in an unconstitutional burden on the federal First and Fourteenth Amendment rights of North Carolina voters. This Court must resolve the substantial federal issue of whether, in the context of redistricting, the Plaintiffs' complaint will necessarily require the enhancement of the partisan redistricting preferences of one political party's supporters at the expense of the partisan redistricting

13

preferences of an opposite political party's supporters in violation of the First and Fourteenth Amendments to the United States Constitution.

41. The State Defendants are therefore entitled to remove this action to this Court because plaintiffs' Complaint raises federal questions "arising under the laws . . . of the United States," so that this Court has original jurisdiction over the claim.

42. Moreover, federal law in this area so pervasively regulates the redistricting process that it completely preempts the types of state-law duties Plaintiffs allege to exist. *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 67 (1987). Plaintiffs are seeking enhanced voting rights on the basis of their political affiliation with a major political party. They are claiming a right to force the General Assembly to fine-tune districts to suit their perceived political interests.

43. These rights are entirely inconsistent with the federal-law scheme of voting-rights legislation and interpretive case law as to be completely preempted by that law.

44. In view of the above facts, this is a civil action which may be removed to this Court.

45. Consistent with 28 U.S.C. § 1446(d), the State Defendants are concurrently filing a Notice of Filing of Notice of Removal with the Clerk of Court for the General Court of Justice, Superior Court Division, Wake County, North Carolina, a copy of which is attached hereto as **Exhibit 2**.

46. Venue is proper in this District under 28 U.S.C. § 1441(a) because this District embraces the place where the removed state court action is pending.

47. Consent from the other Defendants in this action who have not (at least as of yet) sought removal is unnecessary because consent is only required when "a civil action is removed *solely* under section 1441(a)." 28 U.S.C. § 1446(b)(2)(A). That is not the case here.

WHEREFORE, the State Defendants give notice that this action has been removed to the United States District Court for the Eastern District of North Carolina.

Respectfully submitted, this the 14th day of December, 2018.

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.

By: /s/ Phillip J. Strach
Phillip J. Strach
N.C. State Bar No. 29456
Michael McKnight
N.C. State Bar No. 36932
phil.strach@ogletreedeakins.com
michael.mcknight@ogletreedeakins.com
4208 Six Forks Road, Suite 1100
Raleigh, North Carolina 27609
Telephone: (919) 787-9700
Facsimile: (919) 783-9412

BAKER & HOSTETLER, LLP

Mark E. Braden*
(DC Bar #419915)
Richard Raile*
(VA Bar # 84340)
Washington Square, Suite 1100
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5403
rraile@bakerlaw.com
mbraden@bakerlaw.com
Telephone: (202) 861-1500
Facsimile: (202) 861-1783

*Counsel for the Legislative Defendants*
*\*Notice of Appearance under Local Rule 83.1 forthcoming*

# CERTIFICATE OF SERVICE

I hereby certify that on this day, I electronically filed the forgoing **NOTICE OF REMOVAL** with the Clerk of Court using the CM/ECF system and I hereby certify that I have sent the document to the following Plaintiff via U.S. Mail:

Edwin M. Speas, Jr.
Caroline P. Mackie
P.O. Box 1801
Raleigh, NC 27602-1801
(919) 783-6400
espeas@poynerspruill.com

*Counsel for Common Cause, the North Carolina Democratic Party, and the Individual Plaintiffs*

R. Stanton Jones
David P. Gersch
Elisabeth S. Theodore
Daniel F. Jacobson
601 Massachusetts Ave. NW
Washington, DC 20001-3761
(202) 942-5000
Stanton.jones@arnoldporter.com

Marc E. Elias
Aria C. Branch
700 13th Street NW
Washington, DC 20005-3960
(202) 654-6200
melias@perkinscoie.com

Abha Khanna
1201 Third Avenue
Suite 4900
Seattle, WA 98101-3099
(206) 359-8000
akhanna@perkinscoie.com

*Counsel for Common Cause and the Individual Plaintiffs*

This the 14th day of December, 2018.

By: /s/ Phillip J. Strach
Phillip J. Strach
N.C. State Bar No. 29456
Michael McKnight
N.C. State Bar No. 36932
phil.strach@ogletreedeakins.com
michael.mcknight@ogletreedeakins.com
4208 Six Forks Road, Suite 1100
Raleigh, North Carolina 27609
Telephone: (919) 787-9700
Facsimile: (919) 783-9412
*Counsel for the Legislative Defendants*

36711613.1