**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**WESTERN DIVISION**

|  |  |  |
|---|---|---|
| COMMON CAUSE, et al., | ) | |
| | ) | Civil Action No. 5:18-CV-00589 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| REPRESENTATIVE DAVID LEWIS, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

**REPLY IN SUPPORT OF PLAINTIFFS'**
**EMERGENCY MOTION TO REMAND**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION .............................................................................................................. 1

ARGUMENT ..................................................................................................................... 1

    I.      There Is No Plausible Basis for Removal Under 28 U.S.C. § 1443(2) ............................ 1

        A.     There Is No Conflict Between State and Federal Law ........................................ 1

             1.     The Supposed Conflicts Are Hopelessly Speculative ............................ 1

             2.     There Is No Conflict With the Voting Rights Act ................................... 3

             3.     There Is No Conflict With the Fourteenth or Fifteenth Amendment ....... 4

             4.     There Is No Conflict With the *Covington* Remedial Order .................... 5

        B.     Plaintiffs Do Not Challenge Any "Refusal" to Act by Legislative Defendants .... 6

    II.     There Is No Plausible Basis for Removal Under 28 U.S.C. § 1441(a) ............................ 8

    III.    Legislative Defendants Are Estopped from Seeking a Federal Forum for These Claims .. 8

    IV.    This Court Lacks Jurisdiction Over Plaintiffs' State-Law Claims Under *Pennhurst* ........ 9

    V.     Plaintiffs Are Entitled to Attorneys' Fees Under 28 U.S.C. § 1447(c) .......................... 10

CONCLUSION ................................................................................................................. 10

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abbott v. Perez,*
138 S. Ct. 2305 (2018) ................................................................................................... 5

*Baines v. City of Danville,*
357 F.2d 756 (4th Cir. 1966) .......................................................................................... 6

*Brown v. Florida,*
208 F. Supp. 2d 1344 (S.D. Fla. 2002) .......................................................................... 3

*Burns v. Bd. of Sch. Comm'rs of City of Indianapolis,*
302 F. Supp. 309 (S.D. Ind. 1969) ................................................................................. 7

*Cavanaugh v. Brock,*
577 F. Supp. 176 (E.D.N.C. 1983) ................................................................................. 7

*City & Cty. of S.F. v. Civil Serv. Comm'n of S.F.,*
2002 WL 1677711 (N.D. Cal. July 24, 2002) ................................................................ 6

*City of Greensboro v. Guilford County Board of Elections,*
2018 WL 276688 (M.D.N.C. Jan. 3, 2018) .................................................................. 10

*Cooper v. Harris,*
137 S. Ct. 1455 (2017) ................................................................................................... 4

*Covington v. North Carolina,*
283 F. Supp. 3d 410 (M.D.N.C. 2018) ....................................................................... 6, 9

*In re Rodgers,*
2016 WL 917317 (E.D.N.C. Mar. 8, 2016) .................................................................... 9

*Manning v. Hunt,*
119 F.3d 254 (4th Cir. 1997) .......................................................................................... 2

*Mo. State Conf. of NAACP v. Ferguson-Florissant Sch. Dist.,*
894 F.3d 924 (8th Cir. 2018) .......................................................................................... 4

*North Carolina v. Covington,*
138 S. Ct. 2548 (2018) ................................................................................................ 5, 9

*Senators v. Gardner,*
2002 WL 1072305 (D.N.H. May 29, 2002) .................................................................... 3

*Sexson v. Servaas,*
33 F.3d 799 (7th Cir. 1994) ............................................................................................ 3

*Sossamon v. Texas*,
 563 U.S. 277 (2011) ................................................................................................ 9, 10

*Stephenson v. Bartlett*,
 180 F. Supp. 2d 779 (E.D.N.C. 2001) ................................................................. 2, 3, 8

*Stephenson v. Bartlett*,
 562 S.E.2d 377 (N.C. 2002) ............................................................................................ 2

*Wolpoff v. Cuomo*,
 792 F. Supp. 964 (S.D.N.Y. 1992) ................................................................................. 7

*Wright v. North Carolina*,
 787 F.3d 256 (4th Cir. 2017) ......................................................................................... 7

**Statutes and Rules**

28 U.S.C. § 1441(a) ............................................................................................................ 8

28 U.S.C. § 1443(2) ................................................................................................... 1, 6, 8

28 U.S.C. § 1446(b)(2)(A) .................................................................................................. 8

28 U.S.C. § 1447(c) .......................................................................................................... 10

N.C. Gen. Stat. § 1-72.2(a) ......................................................................................... 9, 10

N.C. Gen. Stat. § 1-72.2(b) ............................................................................................. 10

N.C. Gen. Stat. § 120-32.6(b) ........................................................................................... 7

N.C. R. Civ. P. 19(d) ......................................................................................................... 7

## INTRODUCTION

Plaintiffs assert that Legislative Defendants violated state law by deliberately sorting Democratic voters into districts based on their political views to dilute their votes and advantage Republicans. Legislative Defendants removed on the theory that this view of state law conflicts with federal laws prohibiting racial discrimination. Such a conflict could exist only if federal law *requires* mapmakers to *intentionally* discriminate against Democratic voters and favor Republicans. Of course this is ridiculous.

Confronted with common sense and a multitude of their own prior inconsistent statements in creating and defending the 2017 Plans, Legislative Defendants backtrack from many of the original grounds for removal advanced in their Notice of Removal. Most strikingly, they now say in a footnote that they are not even taking the position that "the proffered state-law theory … actually would violate federal law." Mem. Opp'n Emergency Mot. to Remand ("Opp."), Dkt. 42, at 13 n.6. That should end the matter. Legislative Defendants' remaining arguments are baseless in any event.

## ARGUMENT

## I.  There Is No Plausible Basis for Removal Under 28 U.S.C. § 1443(2)

### A.  There Is No Conflict Between State and Federal Law

#### 1.  The Supposed Conflicts Are Hopelessly Speculative

Plaintiffs' remand motion established that Legislative Defendants' assertion of a conflict between state and federal law is speculative at best. Mem. Supp. Emergency Mot. to Remand ("Br."), Dkt. 8, at 10-13. In a stunning admission, Legislative Defendants clarify in their opposition that they are not even asserting that "the proffered state-law theory would conflict with federal law"—they "do not concede at this time that" complying with Plaintiffs' view of state law "actually would violate federal law." Opp. 13 n.6. This is dispositive. Legislative Defendants cannot remove on the ground that they are "refusing" to comply with state law because "it would be inconsistent with [federal] law," 28 U.S.C. § 1443(2), when they do not assert "at this time" that a conflict "actually" exists and concede it may not. Opp. 13 n.6.

The notion that state and federal law conflict here is frivolous in any event. Plaintiffs' state-law claims allege that Legislative Defendants *intentionally* discriminated against Democratic voters by sorting

them into districts based on their political views to dilute their votes and advantage Republicans. Dkt 1-1 ¶¶ 201-02, 211, 217. These claims would conflict with federal law only if federal law *required* state legislatures to *intentionally* advantage one political party. Federal law requires nothing of the sort.

Nor do Plaintiffs "demand" that any remedial plans "destroy," "dismantle," or "drop" the African-American percentage of the voting-age population ("BVAP") in any district. Opp. 12-15, 20. Plaintiffs do not argue that state law requires any particular percentage of Democratic or African-American voters in any district. Plaintiffs argue only that mapmakers cannot intentionally sort voters into districts based on their political views for partisan advantage. Legislative Defendants' prior statements suggest that drawing nonpartisan maps should produce districts with comparable BVAPs. In creating the 2017 Plans, Legislative Defendants said that any districts with a BVAP of roughly "40 percent or 42 percent"—the districts they now call "crossover" districts —were "naturally occurring" because African-American voters "group themselves into … urban areas that are compact." Sen. Redistricting Comm. Hr'g, Aug. 24, 2017, at 101 (attached as Ex. 1). If the racial demographics of those districts occurred "naturally," there is every reason to believe that districts drawn without deliberately seeking partisan advantage will have similar demographics, and at a minimum it is speculative that they will not.

Moreover, Legislative Defendants' theory rests on the untenable presumption that North Carolina state courts will interpret state law in a way that conflicts with federal law. Federal courts must presume the opposite—that state courts will interpret state law to comport with federal law. *Manning v. Hunt*, 119 F.3d 254, 271 (4th Cir. 1997). That is what happened on remand in *Stephenson v. Bartlett*, where the North Carolina Supreme Court interpreted the state constitution's "Whole County Provision" in a manner consistent with the Voting Rights Act. 562 S.E.2d 377, 395-96 (N.C. 2002). As state courts have yet to interpret state law in this case, the notion that state law will conflict with federal law is utterly speculative.

For precisely these reasons, federal courts have repeatedly rejected removals of state-law redistricting cases based on speculative assertions of a conflict with federal law. Br. 11-13. Legislative Defendants note (at 15-16) that the plaintiffs in *Stephenson v. Bartlett*, 180 F. Supp. 2d 779 (E.D.N.C. 2001), proffered an alternative districting plan, but Judge Howard's decision remanding the case did not

even mention it. Legislative Defendants contend that "the court found no conflict because the [state constitution's Whole County Provision] did not directly correlate with racial percentages." Opp. 15. But the Court said no such thing. In fact, the sole reason the Court considered the removal question a "close call" was because the Attorney General of the United States had declared that the Whole County Provision *did violate* the VRA. *Stephenson*, 180 F. Supp. 2d at 784-86. The prospect of a conflict with federal law was therefore far less speculative than here, and yet this Court still remanded.

Legislative Defendants mischaracterize *Sexson v. Servaas*, 33 F.3d 799 (7th Cir. 1994). After initially denying remand on the basis of a supposed VRA defense, the district court later remanded the case when the defendant "inadequately defended" its original VRA theory at trial and instead pressed a different VRA theory. *Id.* at 802. In affirming the remand, the Seventh Circuit explained that there were "infinite variations of apportionment plans" that would comply with both the VRA and state law. *Id.* at 804. And in the footnote Legislative Defendants cite, the Seventh Circuit clearly implied that the initial removal was invalid as well, though the question was not presented. *Id.* at 803 n.2. Nor do Legislative Defendants offer any material basis to distinguish *Senators v. Gardner*, 2002 WL 1072305 (D.N.H. May 29, 2002), and *Brown v. Florida*, 208 F. Supp. 2d 1344 (S.D. Fla. 2002). Like this case, *Brown* involved state-law partisan gerrymandering claims based on packing and cracking of a party's voters. *Id.* at 1348.

Legislative Defendants do not deny that, as Judge Howard observed in *Stephenson*, their theory of removal would mean that "any state constitutional attack on [a] state's redistricting plans would necessarily raise a federal issue" and be subject to removal. Br. 13 (quoting 180 F. Supp. 2d at 784). That would be particularly true for partisan gerrymandering claims, which frequently allege packing and cracking in states where minority voters tend to favor one party. It simply cannot be that every state-law partisan gerrymandering suit is removable to federal court.

## 2. There Is No Conflict With the Voting Rights Act

Confronted with their contradictory prior assertions, Legislative Defendants back away from the claim in their Notice of Removal that they created certain districts to "comply[] with the Voting Rights Act." Notice of Removal ¶ 25. Instead, they argue that the VRA provides a basis for removal because

hypothetical "Section 2 plaintiffs" in a hypothetical future case could argue down the road that the VRA imposes certain requirements. Opp. 20. This is not a valid basis for removal under the refusal clause.

Legislative Defendants have made clear that they do not believe the VRA applies to the 2017 Plans. It is blackletter law that there can be no violation of the VRA unless all three *Gingles* factors are met. *Cooper v. Harris*, 137 S. Ct. 1455, 1472 (2017). If any *Gingles* factor is not met, the VRA does not come into play at all—not with respect to "crossover" districts, majority-minority districts, or any other districts. *Id.* In creating the 2017 Plans, Legislative Defendants repeatedly said that they had concluded the third *Gingles* factor (regarding racial bloc voting) was not met in any district. *E.g.*, Br. Ex. D at 10-11; Ex. E. at 52; Ex. F at 12, 28. Having said at the time the VRA did not apply, Legislative Defendants cannot now contend that *they* refused to comply with state law in creating the 2017 Plans because state law conflicted with the VRA. Nor can they argue that *they* are refusing to comply with state law prospectively because they believe doing so would violate the VRA. Legislative Defendants cite no case authorizing removal under the refusal clause where the removing defendants believe that enforcing state law would be consistent with federal law, but fear some other unidentified party may disagree.

Legislative Defendants' prior statements also estop them from raising any VRA defense in this case. Legislative Defendants argue (at 25) that judicial estoppel does not apply to questions of law, but the existence of racial bloc voting under the VRA is a question of fact. *Mo. State Conf. of NAACP v. Ferguson-Florissant Sch. Dist.*, 894 F.3d 924, 936 (8th Cir. 2018). Legislative Defendants said during the *Covington* remedial process that there was insufficient evidence of racial bloc voting to trigger the VRA, and they cannot turn around now and say there *is* sufficient evidence. Estoppel forbids it.

### 3. There Is No Conflict With the Fourteenth or Fifteenth Amendment

Legislative Defendants abandon their claim that they intentionally engaged in partisan gerrymandering in 2017 to avoid violating the Fourteenth and Fifteenth Amendments. *Compare* Notice of Removal ¶¶ 37-38, *with* Opp. 14-19. Legislative Defendants thus do not claim that they "refused" to comply with state law in 2017 on the ground that doing so would violate federal equal protection. They instead contend that Plaintiffs want to *intentionally* dilute minority voting power through the relief they

seek. The suggestion (at 14-16) that Plaintiffs—including Common Cause, whose mission includes promoting racial equality, and a diverse array of North Carolina voters—want to intentionally discriminate against minority voters for the benefit of the Democratic Party is absurd and offensive. Plaintiffs do not "demand" that anyone "internationally destroy … crossover districts" to "dilute minority voting strength." *Id.* (quotations omitted). Plaintiffs want an end to *all* discrimination against voters.

Anyway, Plaintiffs cannot adopt remedial plans. Only the General Assembly or the courts can. Legislative Defendants' analogy (at 14) to the current plans being drawn under "court supervision" and yet violating state law is inapt. The *Covington* court lacked jurisdiction to stop Legislative Defendants from engaging in partisan gerrymandering in violation of state law (*see infra*), so they availed themselves of the opportunity. By contrast, there is no risk that state courts or the General Assembly under state-court supervision will engage in intentional racial discrimination at the remedial stage here. Br. 16-17.

### 4.    There Is No Conflict With the *Covington* Remedial Order

In another striking backtrack, Legislative Defendants now concede that "the *Covington* order may not immunize the 2017 Plans from attack." Opp. 17 n.8 (citing *Abbott v. Perez*, 138 S. Ct. 2305, 2327 (2018), where plaintiffs successfully challenged a court-approved remedial plan). They say, though, that "[i]f any court is to order North Carolina to depart from plans a federal court ordered it to use, it should be a federal court." *Id.* This preference for a federal forum not only contradicts what Legislative Defendants said earlier this year, Br. 24, it also destroys any basis for removal under the refusal clause. If it would not violate federal law for this Court to depart from the 2017 Plans based on state law, it would not violate federal law for a state court to do the same. If the 2017 Plans are not "immune[e] … from attack" in this Court, Opp. 17 n.8, they are not immune from attack in state court.

The 2017 Plans are not immune from attack. The Supreme Court made clear that the *Covington* district court lacked power even to address state-law challenges to the 2017 Plans, because its "remedial authority" was limited to "ensur[ing] that the racial gerrymanders at issue in [the] case were remedied." *North Carolina v. Covington*, 138 S. Ct. 2548, 2554-55 (2018). Legislative Defendants contend that the Supreme Court drew a distinction between "non-remedial districts" in certain "portions of the state" and

5

"legislative remedial districts" in other parts of the state. Opp. 18. That distinction appears nowhere in the Supreme Court's opinion and makes no sense. The Court's holding was simple: the district court's remedial authority was limited to remedying the federal violations it found.

Indeed, while Legislative Defendants argue (at 18-19) that the *Covington* court had authority to "impos[e] state law" such as the Whole County Provision to districts outside of Wake and Mecklenburg Counties, they argued the opposite in *Covington*, and won. The *Covington* plaintiffs objected that two remedial districts in Greene and Cabarrus Counties violated the Whole County Provision, and Legislative Defendants responded that the court was "foreclosed from ruling on [such] contested issues of state law," since "an unsettled question of state law is more appropriately directed to North Carolina courts." Br., Ex. F at 51. The district court agreed, declining to rule on this "unsettled question of state law" for these districts. *Covington v. North Carolina*, 283 F. Supp. 3d 410, 446 (M.D.N.C. 2018). Estoppel applies.

Regardless, nothing in *Covington* suggests that the court blessed the 2017 Plans as compliant with state law or foreclosed a future state-law challenge. Legislative Defendants ignore that they held out a new state-court lawsuit as a model of how state-law challenges to the 2017 Plans *should* proceed. Br. 18. And Legislative Defendants ignore that the state court there has since ordered them to change districts under the 2017 Plans, and Legislative Defendants intend to comply. *Id.* at 18 n.4. Legislative Defendants cannot say in good faith they are "refusing" to comply with state law here because *any* changes to the 2017 Plans would violate federal law, when they already plan to change the 2017 Plans.

**B.     Plaintiffs Do Not Challenge Any "Refusal" to Act by Legislative Defendants**

The refusal clause independently does not apply because Plaintiffs do not challenge a defendant's "refus[al] to do any act," as the plain text requires. 28 U.S.C. § 1443(2). Legislative Defendants ignore Fourth Circuit precedent confirming that the clause applies only to state officers who "*refused to enforce* discriminatory state laws." *Baines v. City of Danville*, 357 F.2d 756, 772 (4th Cir. 1966) (emphasis added). Nor do they dispute that numerous courts have held that the clause is "unavailable" when a suit challenges "the removing party's *action*, rather than its *inaction*." *City & Cty. of S.F. v. Civil Serv. Comm'n of S.F.*, 2002 WL 1677711, at *4 (N.D. Cal. July 24, 2002); *see* Br. 7-8 (more cases).

Legislative Defendants note (at 10) that these cases involved different "factual scenarios." But the same legal principle holds. The refusal clause does not apply because this suit does not challenge any *refusal* to enforce a discriminatory state law, but rather the affirmative *enactment* of such a law.

Legislative Defendants do not cite a single case—not one—in which state *legislators* were permitted to remove under the refusal clause in a suit challenging the enactment of a state law. To the contrary, in *Wolpoff v. Cuomo*, 792 F. Supp. 964 (S.D.N.Y. 1992), the court rejected a state legislator's removal of a redistricting challenge because "a legislator's refusal to cast his or her vote a certain way cannot be considered 'refusing to do any act' within the meaning of the refusal clause." *Id.* at 968.

Fourth Circuit precedent makes clear why this is so. In *Wright v. North Carolina*, 787 F.3d 256, 262 (4th Cir. 2017), the court of appeals explained that any injunction against further use of a redistricting plan would not apply to legislative leaders, because "[t]he General Assembly retains no ability to enforce any of the laws it passes." Because Legislative Defendants have "no ability to enforce" the 2017 Plans or any other plans, *id.*, they cannot be "refusing" to enforce any state law for purposes of § 1443(2).[1]

The cases Legislative Defendants cite (at 10) as "directly on point" do not even address whether an affirmative act can qualify as "refusing to do any act" under the refusal clause. Beyond that, *Cavanaugh v. Brock*, 577 F. Supp. 176 (E.D.N.C. 1983), does not support removal by legislators because the defendants there "were nonlegislative election officials who were required to 'enforce' the legislature's districting plan." *Wolpoff*, 792 F. Supp. at 968 n.7. And *Stephenson*, while remanding on other grounds, noted that "it is not entirely clear what the defendants refuse to do." 180 F. Supp. 2d at 785. Nor do the school-desegregation cases help Legislative Defendants. Many contain little or no discussion of removal. Others correctly explain that the refusal clause confers removal authority "*only* upon state officers who *refuse to enforce* state laws discriminating on account of race." *Burns v. Bd. of Sch. Comm'rs of City of Indianapolis*, 302 F. Supp. 309, 311-12 (S.D. Ind. 1969) (emphases added).

---

[1] Legislative Defendants suggest (at 10 n.5) that they should not have been named as defendants because they cannot enforce state law, and that naming them might be "sanctionable." But the leaders of the state House and Senate "must be joined as defendants" in any suit "challenging the validity of a North Carolina statute … under State … law." N.C. R. Civ. P. 19(d); *see* N.C. Gen. Stat. § 120-32.6(b) (similar).

## II.    There Is No Plausible Basis for Removal Under 28 U.S.C. § 1441(a)

A defendant needs unanimous consent of all other defendants to remove "solely under section 1441(a)." 28 U.S.C. § 1446(b)(2)(A). Here, the non-removing defendants have confirmed that they "do not consent to removal." Dkt. 39 at 6. If § 1443(2) does not provide a valid basis for removal, the removal here is "solely under" § 1441(a), and it fails for lack of unanimity. Legislative Defendants' argument (at 25) that they do not need unanimous consent even if the removal fails under § 1443(2) is incoherent and wrong. They cite no support for this novel theory, and they ignore the cases cited by Plaintiffs holding otherwise. Br. 20. It cannot be, as Legislative Defendants suggest, that any defendant can evade the unanimity requirement simply by citing another *inapplicable* removal provision.

Removal under § 1441(a) also fails because there is no federal jurisdiction. Plaintiffs' claims arise exclusively under state law, and a federal defense cannot establish federal question jurisdiction. Br. 21; Opp. 22. Nor is any element of *Grable* satisfied. Federal law is not an "element" of *every* claim under the North Carolina Constitution. Opp. 22. If it were, federal courts would have jurisdiction over *every* state-constitutional claim. No case supports that proposition. Further, Legislative Defendants' federal-law arguments are too deeply flawed to be "substantial," and their own brief confirms that the issues are not "actually disputed." Br. 22-23. As stated above, for all their overheated rhetoric, Legislative Defendants do not actually assert that "the proffered state-law theory would conflict with federal law." Opp. 13 n.6. Federal adjudication of this case also would upend "the appropriate balance of federal and state judicial power." Br. 22-23. "Supreme Court pronouncements on the importance of state control over apportionment decisions are manifold." *Stephenson*, 180 F. Supp. 2d at 782.

## III.    Legislative Defendants Are Estopped from Seeking a Federal Forum for These Claims

Just months ago, Legislative Defendants told another district court and the Supreme Court over and over again that federal courts should not and could not hear any state-law challenge to the 2017 Plans. Br. 24. They said that allowing federal courts to adjudicate such a challenge would be "a revolution in federalism." Br., Ex. H at 11. And they won. Br. 24. Judicial estoppel bars Legislative Defendants from now arguing that federal courts are an appropriate—and preferable—forum to hear these state-law claims.

Legislative Defendants assert (at 25) that estoppel applies only to statements "of fact," and that they are free to take diametrically opposed positions in different courts on questions "of law." Even if that were so, whether a federal or state court should hear state-law challenges to the 2017 Plans given the history of those plans is at least partly factual. *See In re Rodgers*, 2016 WL 917317, at *6 (E.D.N.C. Mar. 8, 2016) (Flanagan, J.) (finding litigant judicially estopped from contesting "finality" of state court order).

Legislative Defendants' assertion (at 22) that there is "no inconsistency" between their positions here and in *Covington* is demonstrably false. While Legislative Defendants now say (at 26) that they objected narrowly to federal adjudication of state-law challenges only to specific districts not previously challenged, they *separately* argued that "federal courts have no power to enjoin state districts on state-law claims, especially novel ones." Br., Ex. G at 15. Legislative Defendants said clearly and repeatedly that "*any* state-law challenge must be filed in state court." *Id.* at 30 (emphasis added); *see* Br., Ex. F at 51.

Legislative Defendants prevailed. They ignore that, even before the Supreme Court appeal, they convinced the *Covington* district court not to address "unsettled question[s] of state law" about the 2017 Plans. 283 F. Supp. 3d at 446. Having demanded a state-court forum to resolve such questions, Legislative Defendants cannot, upon being haled into state court, turn around and insist on a federal forum. Legislative Defendants also won at the Supreme Court, which held that the district court should not have heard a different state-law objection to the 2017 Plans because it involved "*the North Carolina Constitution's* ban on mid-decade redistricting, *not federal law.*" 138 S. Ct. at 2554 (emphases added).

## IV. This Court Lacks Jurisdiction Over Plaintiffs' State-Law Claims Under *Pennhurst*

The Eleventh Amendment forbids this Court from hearing Plaintiffs' state-law claims seeking injunctive relief against state officials. Br. 25-26. After cleaving to state sovereign immunity to preclude a federal forum in *Covington*, *id.*, Legislative Defendants purport to willingly waive the State's sovereign immunity here. Opp. 28. But they lack the power to do so.

The "test for determining whether a State has waived its immunity from federal court jurisdiction is a stringent one." *Sossamon v. Texas*, 563 U.S. 277, 284 (2011) (quotations omitted). Legislative Defendants point to N.C. Gen. Stat. § 1-72.2(a), but even if that statute were valid under the state

constitution (which is disputed, Dkt. 39 at 2 n.2), it does not contain the requisite "clear declaration" that Legislative Defendants can *unilaterally* waive the State's sovereign immunity. *Sossamon*, 563 U.S. at 284. Indeed, under the statute, "both the General Assembly and the Governor constitute the State of North Carolina," N.C. Gen. Stat. § 1-72.2(a), and the Governor has not agreed to waive immunity here.

Nor does the statute authorize Legislative Defendants' private counsel to represent the State here, as Legislative Defendants falsely assert (at 28). The provision they cite authorizes "private counsel" to represent Legislative Defendants "to intervene on behalf of the General Assembly"—not to act on behalf of the State in a case separately naming Legislative Defendants. N.C. Gen. Stat. § 1-72.2(b). The Attorney General represents the State, Br. 26-27, and has not consented to suit in federal court. Nor has any court ever held that "the North Carolina General Assembly and the Attorney General can act independently to waive sovereign immunity," as Legislative Defendants falsely claim (at 28). *City of Greensboro v. Guilford County Board of Elections*, 2018 WL 276688 (M.D.N.C. Jan. 3, 2018), suggests nothing of the sort. Regardless, Legislative Defendants do not dispute that the State accepted service more than 30 days prior to removal here, making any removal on behalf of the State untimely. Br. 27.

**V.      Plaintiffs Are Entitled to Attorneys' Fees Under 28 U.S.C. § 1447(c)**

Plaintiffs are entitled to fees because this removal was objectively unreasonable, especially given that it rests on assertions that flatly contradict Legislative Defendants' representations to other federal courts earlier this year. The removal is even more egregious because Legislative Defendants now admit (at 13 n.6) that they removed even though they do not "concede" that there is "actually" a conflict between state and federal law, when removal under the refusal clause required them to *assert* such a conflict. If the Court prefers separate briefing on the fee question, Plaintiffs respectfully request that the Court remand now to avoid further delay, and retain jurisdiction solely to decide whether to award fees.

## CONCLUSION

The Court should remand this case and award attorneys' fees and costs to Plaintiffs. The Court should reject Legislative Defendants' proposal (at 30) to create further delay by requiring the submission of alternative plans. Legislative Defendants bear the burden to justify removal, and they have not met it.

DATED:  December 30, 2018

Respectfully submitted,

/s/ Edwin M. Speas, Jr.
Edwin M. Speas, Jr.
N.C. State Bar No. 4112
Caroline P. Mackie
N.C. State Bar No. 41512
POYNER SPRUILL LLP
P.O. Box 1801
Raleigh, NC  27602-1801
(919) 783-6400
espeas@poynerspruill.com

*Counsel for Common Cause, the
North Carolina Democratic Party,
and the Individual Plaintiffs*

/s/ R. Stanton Jones
R. Stanton Jones*
David P. Gersch*
Elisabeth S. Theodore**
Daniel F. Jacobson*
ARNOLD & PORTER
  KAYE SCHOLER LLP
601 Massachusetts Avenue NW
Washington, DC 20001-3743
(202) 954-5000
stanton.jones@arnoldporter.com

/s/ Marc E. Elias
Marc E. Elias**
Aria C. Branch*
PERKINS COIE LLP
700 13th Street NW
Washington, DC 20005-3960
(202) 654-6200
melias@perkinscoie.com

Abha Khanna*
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
(206) 359-8000
akhanna@perkinscoie.com

*Counsel for Common Cause and the Individual
Plaintiffs*

*\* Admitted Pro Hac Vice*
*\*\* Pro Hac Vice motions forthcoming*

11

## CERTIFICATE OF SERVICE

I hereby certify that on this date, December 30, 2018, I caused the foregoing document to be filed and served on all counsel of record by operation of the CM/ECF system for the United States District Court for the Eastern District of North Carolina. I further certify that simultaneously with this filing via CM/ECF, I caused the foregoing document to be served by electronic mail on all counsel of record for all Defendants in the Superior Court case.

DATED: December 30, 2018          /s/ R. Stanton Jones
                                       R. Stanton Jones