IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:18-CV-589-FL

| | | |
|---|---|---|
| COMMON CAUSE; NORTH CAROLINA DEMOCRATIC; PAULA ANN CHAPMAN; HOWARD DUBOSE; GEORGE DAVID GAUCK; JAMES MACKIN NESBIT; DWIGHT JORDAN; JOSEPH THOMAS GATES; MARK S. PETERS; PAMELA MORTON; VIRGINIA WALTERS BRIEN; JOHN MARK TURNER; LEON CHARLES SCHALLER; EDWIN M. SPEAS, JR.; REBECCA HARPER; LESLEY BROOK WISCHMANN; DAVID DWIGHT BROWN; AMY CLARE OSEROFF; KRISTIN PARKER JACKSON; JOHN BALLA; REBECCA JOHNSON; AARON WOLFF; MARY ANN PEDEN-COVIELLO; KAREN SUE HOLBROOK; KATHLEEN BARNES; ANN MCCRACKEN; JACKSON THOMAS DUNN, JR.; ALYCE MACHAK; WILLIAM SERVICE; DONALD RUMPH; STEPHEN DOUGLAS MCGRIGOR; NANCY BRADLEY; VINOD THOMAS; DERRICK MILLER; ELECTA E. PERSON; DEBORAH ANDERSON SMITH; ROSALYN SLOAN; JULIE ANN FREY; LILY NICOLE QUICK; JOSHUA BROWN; and CARLTON E. CAMPBELL, SR., | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | MEMORANDUM OPINION |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| REPRESENTATIVE DAVID R. LEWIS In his official capacity as Senior Chairman of the House Select Committee on | ) ) ) | |

Redistricting; SENATOR RALPH E. )
HISE, JR. In his official capacity as )
Chairman of the Senate Committee on )
Redistricting; SPEAKER OF THE )
HOUSE TIMOTHY K. MOORE; ANDY )
PENRY Chairman of the North Carolina )
State Board of Elections and Ethics )
Enforcement; JOSHUA MALCOLM )
Vice-Chair of the North Carolina State )
Board of Elections & Ethics Enforcement; )
KEN RAYMOND Secretary of the North )
Carolina State Board of Elections & Ethics )
Enforcement; STELLA ANDERSON )
Member of the North Carolina State Board )
of Elections & Ethics Enforcement; )
PRESIDENT PRO TEMPORE OF THE )
NORTH CAROLINA SENATE PHILIP )
E. BERGER; THE STATE OF NORTH )
CAROLINA; THE NORTH CAROLINA )
STATE BOARD OF ELECTIONS AND )
ETHICS ENFORCEMENT; DAMON )
CIRCOSTA Member of the North )
Carolina State Board of Elections & Ethics )
Enforcement; STACY "FOUR" EGGERS, )
IV Member of the North Carolina State )
Board of Elections & Ethics Enforcement; )
JAY HEMPHILL Member of the North )
Carolina State Board of Elections & Ethics )
Enforcement; VALERIE JOHNSON )
Member of the North Carolina State Board )
of Elections & Ethics Enforcement; JOHN )
LEWIS Member of the North Carolina )
State Board of Elections & Ethics )
Enforcement; THE NORTH CAROLINA )
STATE BOARD OF ELECTIONS AND )
ETHICS ENFORCEMENT; ROBERT )
CORDLE Member of the North Carolina )
State Board of Elections & Ethics )
Enforcement, )
 )
      Defendants. )

This matter came before the court on plaintiffs' emergency motion for remand (DE 5). On January 2, 2019, the court granted the motion, remanded the matter to state court, and denied plaintiffs' request for costs and expenses under 28 U.S.C. § 1447(c).[1] The court memorializes herein its reasoning for this decision.

**STATEMENT OF THE CASE**

Plaintiffs commenced this action in Superior Court of Wake County on November 13, 2018, and filed amended complaint on December 7, 2018, asserting that districting plans enacted by the North Carolina General Assembly in 2017 for the North Carolina House of Representatives and Senate (the "2017 Plans") are unconstitutional and invalid under the North Carolina Constitution. Plaintiffs seek the following relief from the state court, sitting as a three-judge panel:

a. Declare that each of the 2017 Plans is unconstitutional and invalid because each violates the rights of Plaintiffs and all Democratic voters in North Carolina under the North Carolina Constitution's Equal Protection Clause, Art. I, § 19; Free Elections Clause, Art. I, § 5; and Freedom of Speech and Freedom of Assembly Clauses, Art. I, §§ 12 & 14;

b. Enjoin Defendants, their agents, officers, and employees from administering, preparing for, or moving forward with the 2020 primary and general elections for the North Carolina General Assembly using the 2017 Plans;

c. Establish new state House and state Senate districting plans that comply with the North Carolina Constitution, if the North Carolina General Assembly fails to enact new state House and state Senate districting plans comporting with the North Carolina Constitution in a timely manner;

d. Grant Plaintiffs such other and further relief as the Court deems just and appropriate.

---

[1] Also now pending before the court is a Motion For Order Confirming Applicability of Stay of Judgment under Rule 62(a) (DE 45), which the court will address by separate order.

(Am. Compl. p.75).[2]

Plaintiffs are Common Cause, the North Carolina Democratic Party, and 38 individual registered Democrat voters. Defendants Representative David R. Lewis; Senator Ralph E. Hise, Jr.; Speaker of the House Timothy K. Moore; and President Pro Tempore of the North Carolina Senate Philip E. Berger, are members of the North Carolina Senate and House named in their official capacities (collectively, the "Legislative Defendants"). Additional defendants are the State of North Carolina, the North Carolina State Board of Elections and Ethics Enforcement, and individual officers and members of the North Carolina State Board of Elections and Ethics Enforcement (collectively, the "State Defendants").[3]

On December 14, 2018, the Legislative Defendants filed a notice of removal in this court. The notice of removal states that it is filed also on behalf of the State of North Carolina in the following respect: "Pursuant to N.C. Gen. Stat. § 1-72.2, the legislative branch of North Carolina state government is considered the 'State of North Carolina' in actions challenging statutes enacted by the North Carolina General Assembly along with the executive branch of state government." (Notice of Removal (DE 1) at 3 n. 1).[4] The notice of removal is signed by counsel who has entered an appearance on behalf of the Legislative Defendants. (Id. at 16; Notices of Appearance (DE 2,

---

[2] A copy of plaintiffs' amended complaint is filed at docket entries 1 and 32 (DE 1, 32). For ease of reference, page numbers in citations to documents in the record specify the page number showing on the face of the underlying document rather than the page number specified in the court's electronic case filing (ECF) system.

[3] In their response to the motion to remand, the State Defendants note prior changes and ongoing uncertainty in the composition and membership of the North Carolina State Board of Elections and Ethics Enforcement. Because these changes do not impact the analysis herein, the court adheres to individual State Defendants' names as referenced in the original complaint, and as reflected in the court's docket, in the caption of this order, for ease of reference.

[4] All subsequent filings by the Legislative Defendants in this court have been made also on behalf of the State of North Carolina in this manner, such that references in this opinion to filings or arguments made by the Legislative Defendants are to be understood as including the specification that they are made also on behalf of the State of North Carolina in the respect quoted above in the text.

3)). Attached to the notice of removal are copies of the state court pleadings and certain documents filed in state court,[5] as well as the Legislative Defendants' state court notice of filing of notice of removal.

Plaintiffs filed an emergency motion to remand on December 17, 2018. In support of the motion, plaintiffs filed a memorandum attaching the following documents: 1) acceptance of service filed in state court on November 19, 2018, on behalf of the State Defendants; 2) plaintiffs' motion filed in state court on November 20, 2018, for expedited discovery and trial and for case management order; 3) emails between state trial court administrator and counsel; and 4) certain district court and Supreme Court filings made in Covington v. North Carolina, No. 15-CV-399 (M.D.N.C.) ("Covington").

On December 18, 2018, the court set a December 28, 2018, deadline for any responses to the motion to remand. The Legislative Defendants filed an answer to the complaint on December 21, 2018. On the same date, the State Defendants moved for extension of time to answer.

On December 28, 2018, the State Defendants responded to the motion to remand, stating that they agree the matter should be remanded.[6] That same date, the Legislative Defendants filed a response in opposition to remand, attaching documents filed in Covington, and two other cases: 1) Dickson v. Rucho, 11 CVS 16896 (Superior Court of Wake County), and 2) Stephenson v. Bartlett, 4:01-CV-171-H (E.D.N.C.). Plaintiffs replied in support of remand on December 30, 2018, relying

---

[5] Legislative Defendants filed on December 20, 2018, an amended Exhibit 1 to their notice removal that includes an additional document filed in state court on November 20, 2018, comprising a motion by plaintiffs' for expedited discovery and trial and for case management order.

[6] The State of North Carolina, through its response, also "objects to the removal" where it "purports to be on behalf of the State of North Carolina," noting that "[t]he Attorney General reserves the right to challenge, in an appropriate setting, the interpretation of [N.C. Gen. Stat.] § 1-72.2 that the Legislative Defendants appear to be advancing . . . . [b]ut the Court need not address those unsettled state-law issues to rule on Plaintiffs' Motion to Remand." (State Defendants' Resp. (DE 39) at 2 n. 2)

5

upon a North Carolina Senate hearing transcript.

On January 2, 2019, the court granted plaintiffs' motion to remand, stating:

> This matter is before the court on plaintiffs' emergency motion to remand (DE 5). The court having fully considered the matter and the briefing by the parties, it is hereby ORDERED that plaintiffs' motion is GRANTED. This case is REMANDED to the General Court of Justice, Superior Court Division, Wake County, North Carolina, for further proceedings. The court DENIES plaintiffs' request for costs and expenses under 28 U.S.C. § 1447(c). A memorandum opinion memorializing the court's reasoning for this decision will follow. In light of remand, the clerk is DIRECTED to terminate as moot the pending motion for extension of time to file answer (DE 34).

(Order (DE 44) at 3).

## COURT'S DISCUSSION

A.    Standard of Review

In any case removed from state court, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). "The burden of establishing federal jurisdiction is placed upon the party seeking removal." Mulcahey v. Columbia Organic Chemicals Co., 29 F.3d 148, 151 (4th Cir. 1994). "Because removal jurisdiction raises significant federalism concerns, [the court] must strictly construe removal jurisdiction." Id. "If federal jurisdiction is doubtful, a remand is necessary." Id.; see Palisades Collections LLC v. Shorts, 552 F.3d 327, 336 (4th Cir. 2008) (recognizing the court's "duty to construe removal jurisdiction strictly and resolve doubts in favor of remand").

B.    Analysis

The Legislative Defendants rely upon two independent statutory provisions as a basis for removal, which the court will address in turn below.

6

1. 28 U.S.C. § 1443(2)

The Legislative Defendants assert that removal is appropriate under a subsection of 28 U.S.C. § 1443 that provides for removal of state-court actions against a defendant "for refusing to do any act on the ground that it would be inconsistent with" any "law providing for equal rights." (Notice of Removal ¶ 6).

Section 1443 provides in its entirety as follows:

> Any of the following civil actions or criminal prosecutions, commenced in a State court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending:
>
> (1) Against any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof;
>
> (2) For any act under color of authority derived from any law providing for equal rights, or <u>for refusing to do any act on the ground that it would be inconsistent with such law</u>.

28 U.S.C. § 1443 (emphasis added).

This "statute . . . has been described as a text of exquisite obscurity." <u>Baines v. City of Danville, Va.</u>, 357 F.2d 756, 759 (4th Cir. 1966) (en banc) (internal quotations omitted). The Supreme Court and the Fourth Circuit both interpreted the meaning of the provisions of § 1443 in separate cases in 1966, where each court observed, with respect to the quoted text emphasized above:

> The refusal language was added by amendment in the House with the explanation that it was intended to enable state officers who refused to enforce discriminatory state laws in conflict with Section 1 of the Civil Rights Act of 1866 and who were prosecuted in the state courts because of their refusal to enforce state law, to remove their proceedings to the federal court.

<u>Id.</u> at 772; <u>see</u> <u>City of Greenwood, Miss. v. Peacock</u>, 384 U.S. 808, 824 n.22 (1966). Since that

7

time, it appears that neither the Supreme Court nor the Fourth Circuit has interpreted the "refusing" clause in subsection (2).

In Cavanagh v. Brock, 577 F. Supp. 176 (E.D.N.C. 1983), a three-judge panel of this court held that a state court action "seeking declaratory and injunctive relief restraining the state of North Carolina from implementing the reapportionment plans as precleared on April 30, 1982, by the Attorney General," was properly removed to this court under the "refusal" clause of § 1443. Id. at 179-180. By contrast, in Stephenson v. Bartlett, 180 F. Supp. 2d 779 (E.D.N.C. 2001), this court held that a state court action "challenging the redistrict plans proposed by the North Carolina General Assembly" was not properly removed to this court under the "refusal" clause of § 1443. Id. at 781, 785-786. Two other federal district courts have held that state court actions challenging legislative district plans were not properly removed under the "refusal" clause of § 1443. See Brown v. Fla., 208 F. Supp. 2d 1344, 1351 (S.D. Fla. 2002); Wolpoff v. Cuomo, 792 F. Supp. 964, 968 (S.D.N.Y. 1992).

Against this legal background, applicability of § 1443 to plaintiffs' action is doubtful for several reasons. First, plaintiffs' state court action is not brought against the Legislative Defendants "for refusing to do" anything. 28 U.S.C. § 1443(2). Rather, plaintiffs challenge an action already completed, in the form of the 2017 Plans, as "unconstitutional and invalid." (Am. Compl. p. 75). Legislative Defendants are "necessary parties" in any such suit where "the validity or constitutionality of an act of the General Assembly or a provision of the Constitution of North Carolina is the subject of an action." N.C. Gen. Stat. § 120-32.6; see N.C. R. Civ. P. 19(d). Plaintiffs' prayer for injunctive relief further reinforces this point, where they seek to enjoin defendants from "administering, preparing for, or moving forward with the 2020 primary and

8

general elections . . . using the 2017 plans," which not a legislative activity. (Am. Compl. ¶ 75). Finally, they do not seek an injunction compelling the Legislative Defendants to act, but rather call upon the state court to establish new plans "if the North Carolina General Assembly fails to" do so. (Id.) (emphasis added). In such circumstances, as this court already has observed, "it is not entirely clear what the defendants refuse to do." Stephenson, 180 F. Supp. 2d at 785.

Second, plaintiffs' action is not removable by the Legislative Defendants because they have only a legislative role, rather than a law enforcement role. The Supreme Court, the Fourth Circuit en banc, and other federal courts have recognized that the "refusal" clause of § 1443 was intended to apply to "state officers who refused to enforce" state laws. Baines, 357 F.2d at 759 (emphasis added); see Peacock, 384 U.S. at 824 n.22 (noting clause was "intended to enable State officers . . . . refusing to enforce" state laws in reference to federal equal protection laws). Indeed, one federal court has stated that "the privilege of removal is conferred . . . only upon state officers who refuse to enforce state laws discriminating on account of race or color." Burns v. Bd. of Sch. Comm'rs of City of Indianapolis, Ind., 302 F. Supp. 309, 311-12 (S.D. Ind. 1969) (emphasis added); see also Wolpoff v. Cuomo, 792 F. Supp. 964, 968 (S.D.N.Y. 1992) ("It is untenable to argue . . . that Congress intended that the statute could or should be used by legislators sued solely because of their refusals to cast votes in a certain way."). While such interpretations have been expressed in dicta, they raise sufficient doubt regarding applicability of § 1443 to state legislators to preclude removal jurisdiction here.

Third, as this court found in Stephenson, here also "it is unknown whether plaintiffs' attempt to enforce the provisions of the North Carolina constitution would run afoul of federal voting law," and "any implication of the refusal clause is speculative." 180 F. Supp. 2d at 785. Thus, as in

Stephenson, "plaintiffs are merely 'seeking an alternative apportionment plan which also fully complie[s] with federal law but varie[s] from the defendants' plan only in its interpretation of state law.'" 180 F. Supp. 2d at 785 (quoting Sexson v. Servaas, 33 F.3d 799, 804 (7th Cir. 1994)) (brackets in original).

In sum, it is doubtful that § 1443 applies to confer removal jurisdiction in this case. Arguments raised by the Legislative Defendants in favor of removal under § 1443 are insufficient to overcome this doubt. At the outset, the court notes that the Legislative Defendants cite no case in which state legislators were permitted to remove to federal court under the refusal clause in a suit challenging enactment of state redistricting law. Cases cited by the Legislative Defendants are all inapposite on the basis of one or several factors set forth above.

For example, the Legislative Defendants cite to Cavanagh, where this court permitted removal of a state court suit challenging enactment of North Carolina redistricting law. But, Cavanagh does not discuss removal by state legislators; rather, it describes the action as "seeking declaratory and injunctive relief restraining the state of North Carolina from implementing the reapportionment plans." 557 F. Supp. at 176 (emphasis added). Nor does Cavanagh mention the enforcement limitation described in Peacock and Baines. See, e.g., Wolpoff, 792 F.Supp. at 968 (distinguishing Cavanagh on this basis in remanding legislator's removal of state suit challenging districting plan).

The Legislative Defendants also rely upon Alonzo v. City of Corpus Christi, 68 F.3d 944 (5th Cir. 1995), where the court affirmed removal of a state suit challenging a city's method of electing city council members, where the city alleged a colorable conflict between a prior federal consent decree and the relief sought in state court. Legislative Defendants argue that they are in an

10

analogous position to the defendants in Alonzo. But, Alonzo is distinguishable on multiple critical fronts. In Alonzo, the plaintiffs' suit was described as a challenge "of the City's use of [the existing] system in its elections," and thus the City properly removed under the refusal clause. 68 F.3d at 946. Alonzo did not discuss the "refusal" element as it applies to legislators in contrast to officials who enforce or implement state law. Alonzo would only be analogous to the instant case if the State Defendants in addition to the Legislative Defendants had sought removal under § 1443, but here the State Defendants oppose removal. Furthermore, the federal consent decree in Alonzo, "mandate[d]" a specific existing "5-3-1 system" in elections, whereas the federal law applicable here does not mandate the specific existing apportionment to the exclusion of no others. See North Carolina v. Covington, 138 S.Ct. 2548, 2555 (2018) ("Once the District Court had ensured that the racial gerrymanders at issue in this case were remedied, its proper role in North Carolina's legislative districting process was at an end.").

The Legislative Defendants similarly rely upon a series of federal cases from the 1970s in which school boards were permitted to remove state-law challenges to school desegregation plans. None of these, however, were removed by legislators or state actors who did not enforce or implement legislation. Indeed, the first of these, Burns, opined that the "refusal" clause of § 1443 conferred the "privilege of removal . . . only upon state officers who refuse to enforce state laws discriminating on account of race or color." 302 F.Supp. at 311-12. In Burns, defendant state officials and school board members were "threatened with punishment for contempt if they disobey the order of a state court and refuse to undo their actual and contemplated transfer of teachers on the

11

ground that to do so would be inconsistent with such federal law." Id. at 312 (emphasis added).[7] Comparison to the instant case is inapt, on both fronts, where plaintiffs do not seek to enjoin Legislative Defendants directly, and where Legislative Defendants are not charged with implementing or enforcing their own legislation. See Wright v. North Carolina, 787 F.3d 256, 262-63 (4th Cir. 2015).

The Legislative Defendants cite several cases for the proposition that removal is appropriate where there is a "colorable conflict between state and federal law." White v. Wellington, 627 F.2d 582, 587 (2d Cir. 1980); e.g., Alonzo, 68 F.3d at 946; New Haven Firefighters Local 825 v. City of New Haven, No. CIV.3:04CV1169(MRK), 2004 WL 2381739, at *1 (D. Conn. Sept. 28, 2004). As an initial matter, this statement of the type of conflict required is a stretch of the language of the removal statute, which references in its text inconsistency only between the act being refused and federal equal protection law. See 28 U.S.C. § 1443(2) (permitting removal of a state civil action "for refusing to do any act on the ground that it would be inconsistent with such [federal equal protection] law") (emphasis added). This distinction is important in the instant context, where it is doubtful there has been a refusal to act within the application of this removal provision on the part of the Legislative Defendants. Where a refusal to act is itself doubtful and uncertain, any conflict

---

[7] Other school board cases cited by defendants are similar. See, e.g., Mills v. Birmingham Bd. of Ed., 449 F.2d 902, 904 (5th Cir. 1971) (plaintiff teacher sought "to enjoin the Board from transferring her" and obtained the requested injunction from state court prior to removal by defendants); Linker v. Unified Sch. Dist. No. 259, Wichita, Kan., 344 F. Supp. 1187, 1189 (D. Kan. 1972) (plaintiffs sought to enjoin defendant school district from "operating under" and "implement[ing]" a desegregation plan); Bridgeport Ed. Ass'n v. Zinner, 415 F. Supp. 715, 717 (D. Conn. 1976) (plaintiff teachers and association claimed that alleged that three appointments were made by defendant school board and officials in violation of municipal law and contract); Buffalo Teachers Fed'n v. Bd. of Ed. of City of Buffalo, 477 F. Supp. 691, 692 (W.D.N.Y. 1979) (plaintiff teachers sought and obtained state court order "restraining the Board from taking any action" in carrying out teacher hiring and promotions).

between such refusal and federal law also is uncertain. See Stephenson, 180 F.Supp. 2d at 785.

In any event, the cases cited by the Legislative Defendants illustrating a "colorable conflict between state and federal law" are inapposite, because they do not involve a purported conflict between a state constitution and the federal constitution,[8] much less in a state where, as here, the state supreme court has already pronounced that "compliance with federal law is . . . an express condition to the enforceability of every provision in the State Constitution." Stephenson v. Bartlett, 355 N.C. 354 , 375 (2002). In such circumstances, the court adheres to its earlier analysis in Stephenson, finding the purported conflict uncertain and speculative. The court recognizes the detailed arguments on the merits advanced by both the Legislative Defendants and plaintiffs' regarding whether plaintiffs' "view" or "interpretation" of state law can be reconciled with federal law and Covington. (Leg. Defs' Opp. (DE 42) at 14). For purposes of the present jurisdictional determination, however, under which doubts must be resolved in favor of remand, and where it is already doubtful that § 1443(2) applies at all to Legislative Defendants, it suffices that it is uncertain and speculative whether the ultimate relief sought in plaintiffs' complaint in the form of new plans "comporting with the North Carolina Constitution" would conflict with federal law. (Am. Compl. p. 75); see Stephenson, 180 F.Supp.2d at 785.

For all the reasons stated above separately and in combination, Legislative Defendants have

---

[8] See, e.g., White, 627 F.2d at 585 (plaintiffs asserted violations of a "city charter and civil service rules and regulations, all having the force of state law"); Alonzo, 68 F.3d at 945 (plaintiffs asserted violations of Texas Equal Rights Amendment and Voting Rights Act); Greenberg v. Veteran, 889 F.2d 418, 420 (2d Cir. 1989) (plaintiffs asserted violation of "Village Law," state statute, and First Amendment, against city official); New Haven Firefighters Local 825, 2004 WL 2381739 at *1 (plaintiffs asserted violations of the "Charter of the City of New Haven and New Haven's Civil Service Rules and Regulations"); Buffalo Teachers Fed'n, 477 F. Supp. at 692 (plaintiffs asserted claims, and state court entered injunction, pursuant to "the New York State Education Law" and "the terms of [a] collective bargaining agreement").

.

not demonstrated that removal under 28 U.S.C. § 1443 is proper under the circumstances of this case.

2.	28 U.S.C. § 1441(a)

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court." 28 U.S.C. § 1441(a). Federal district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

Under the "well-pleaded complaint rule," "a defendant may not remove a case to federal court unless the plaintiff's complaint establishes that the case 'arises under' federal law." Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. California, 463 U.S. 1, 10 (1983). "A defense that raises a federal question is inadequate to confer federal jurisdiction." Merrell Dow Pharm. Inc. v. Thompson, 478 U.S. 804, 808 (1986).

Plaintiffs' action falls squarely within this jurisdictional limitation. Plaintiffs assert solely state law claims under the North Carolina Constitution. Although defendants have asserted a conflict with federal law as a defense to plaintiffs' claims, "it is now settled law that a case may not be removed to federal court on the basis of a federal defense." Caterpillar Inc. v. Williams, 482 U.S. 386, 393 (1987). Indeed, in both Cavanagh and Stephenson, this court determined that state constitutional redistricting challenges did not arise under federal law, despite defendants' assertion of a conflict with federal law. Cavanagh, 577 F. Supp. at 180; Stephenson, 180 F. Supp. 2d 783-784. In light of this law, removal jurisdiction under § 1441(a) is doubtful.

The Legislative Defendants, nonetheless, contend that federal law is "necessarily raised" here because demonstrating compliance with federal law is an "affirmative element" plaintiffs' claim

14

or a "prima facie" claim under the North Carolina constitution. "[E]ven where a claim finds its origins in state rather than federal law," the Supreme Court has "identified a special and small category of cases in which arising under jurisdiction still lies." Gunn v. Minton, 568 U.S. 251, 258 (2013). "That is, federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." Id.

The premise of Legislative Defendants' argument is flawed, however, because federal law is not an "affirmative element" of plaintiffs' claim or a prima facie case under the North Carolina Constitution. Legislative Defendants rely upon the North Carolina Supreme Court's statement in Stephenson that "compliance with federal law is not an implied, but rather an express condition to the enforceability of every provision in the State Constitution." 355 N.C. at 375. But, a reference to an "express condition to enforceability" is not the same as an element of a claim or prima facie case, and Stephenson says nothing about the elements of a claim or prima facie case under the State Constitution. Moreover, as this court suggested in Stephenson, interpreting all state constitutional redistricting claims in this manner as arising under federal law would result without limitation in "perpetual federal intrusion" in an area where federal-state balance has been carefully crafted by Congress and the Supreme Court. See, e.g., Growe v. Emison, 507 U.S. 25, 34 (1993) ("[T]he Constitution leaves with the States primary responsibility for apportionment of their federal congressional and state legislative districts.").

Defendants also rely upon N. Carolina by & through N. Carolina Dep't of Admin. v. Alcoa Power Generating, Inc., 853 F.3d 140, 147 (4th Cir. 2017), as an example of a state law claim removable because of a necessary federal question. That case, however, is instructively

15

distinguishable, where it involved a claim of "state ownership of navigable waters." Id. at 147. In finding jurisdiction, applying a body of Supreme Court precedent in that area of law, the court recognized that "navigability for title" was "governed by federal law" Id. (citing United States v. Utah, 283 U.S. 64 (1931); PPL Montana, LLC v. Montana, 565 U.S. 576 (2012)). "[T]he question of navigability was thus determinative of the controversy, and that is a federal question." Id. (quoting Utah, 283 U.S. at 75). Here, there is no comparable body of Supreme Court precedent stating that the redistricting claims raised by plaintiffs necessarily must be resolved only by reference to federal law.

Therefore, the Legislative Defendants have not met their burden of demonstrating removal jurisdiction under 28 U.S.C. § 1441(a). In sum, where the court lacks jurisdiction under both grounds asserted by the Legislative Defendants, remand is required.[9]

3. Costs and Expenses

"An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c).

> Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied. In applying this rule, district courts retain discretion to consider whether unusual circumstances warrant a departure from the rule in a given case. For instance, a plaintiff's delay in seeking remand or failure to disclose facts necessary to determine jurisdiction may affect the decision to award attorney's fees. When a court exercises its discretion in this manner, however, its reasons for departing from the general rule should be faithful to the purposes of awarding fees under § 1447(c).

Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005). Plaintiffs have not demonstrated that

---

[9] Because the court finds jurisdiction lacking under the removal provisions asserted by the Legislative Defendants, the court does not reach additional arguments plaintiffs raise in support of remand, including procedural defect in removal under § 1441(a); sovereign immunity under Penhurst State School & Hospital v. Halderman, 465 U.S. 89 (1984); and judicial estoppel.

they are entitled to costs and expenses, including attorney fees, under the circumstances of this case. The Legislative Defendants did not lack an objectively reasonable basis for seeking removal. Their removal petition sets forth in detail their grounds for removal and they have comprehensively briefed the issues arising from their removal, including with reference to a wide range of case law.

Plaintiffs suggest that an award of fees is warranted because Legislative Defendants' timed their removal to cause "maximum delay and disruption." (Pls' Mem. at 29). However, Legislative Defendants' did not act outside of the time limits set forth in the removal statute. They exercised their rights under that law to assert grounds for removal to this court, and they followed this court's order for expedited briefing on plaintiffs' motion to remand.

In sum, the court declines in its discretion to award costs and expenses in light of both the substance and timing of the removal petition.

## CONCLUSION

Based on the foregoing reasons, the court granted plaintiffs motion to remand and denied plaintiffs' request for costs and expenses.

SO NOTICED, this the 7th day of January, 2019.

_____
LOUISE W. FLANAGAN
United States District Judge