**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 19–1091

COMMON CAUSE; NORTH CAROLINA DEMOCRATIC PARTY; PAULA ANN CHAPMAN; HOWARD DUBOSE; GEORGE DAVID GAUCK; JAMES MACKIN NESBIT; DWIGHT JORDAN; JOSEPH THOMAS GATES; MARK S. PETERS; PAMELA MORTON; VIRGINIA WALTERS BRIEN; JOHN MARK TURNER; LEON CHARLES SCHALLER; REBECCA HARPER; LESLEY BROOK WISCHMANN; DAVID DWIGHT BROWN; AMY CLARE OSEROFF; KRISTIN PARKER JACKSON; JOHN BALLA; REBECCA JOHNSON; AARON WOLFF; KAREN SUE HOLBROOK; KATHLEEN BARNES; ANN MCCRACKEN; JACKSON THOMAS DUNN, JR.; ALYCE MACHAK; WILLIAM SERVICE; DONALD RUMPH; STEPHEN DOUGLAS MCGRIGOR; NANCY BRADLEY; VINOD THOMAS; DERRICK MILLER; ELECTA E. PERSON; DEBORAH ANDERSON SMITH; ROSALYN SLOAN; JULIE ANN FREY; LILY NICOLE QUICK; JOSHUA BROWN; CARLTON E. CAMPBELL, SR.,

Plaintiffs – Appellees,

and

MARY ANN PEDEN-COVIELLO,

Plaintiff,

v.

REPRESENTATIVE DAVID R. LEWIS, in his official capacity as Senior Chairman of the House Select Committee on Redistricting; SENATOR RALPH E, HISE, JR., in his official capacity as Chairman of the Senate Committee on Redistricting; SPEAKER OF THE HOUSE TIMOTHY K. MOORE; PRESIDENT PRO TEMPORE OF THE NORTH CAROLINA SENATE PHILIP E. BERGER; THE STATE OF NORTH CAROLINA,

Defendants – Appellants,

and

ANDY PENRY, Chairman of the North Carolina State Board of Elections and Ethics Enforcement; JOSHUA MALCOLM, Vice-Chair of the North Carolina State Board of Elections and Ethics Enforcement; KEN RAYMOND, Secretary of the North Carolina Board of Elections and Ethics Enforcement; STELLA ANDERSON, Member of the North Carolina State Board of Elections and Ethics Enforcement; THE NORTH CAROLINA STATE BOARD OF ELECTIONS AND ETHICS ENFORCEMENT; DAMON CIRCOSTA, Member of the North Carolina State Board of Elections and Ethics Enforcement; STACY "FOUR" EGGERS, IV, Member of the North Carolina State Board of Elections and Ethics Enforcement; JAY HEMPHILL, Member of the North Carolina State Board of Elections and Ethics Enforcement; VALERIE JOHNSON, Member of the North Carolina State Board of Elections and Ethics Enforcement; JOHN LEWIS, Member of the North Carolina State Board of Elections and Ethics Enforcement; ROBERT CORDLE, Member of the North Carolina State Board of Elections and Ethics Enforcement,

                    Defendants.

------------------------------_____

REGINALD REID,

                    Amicus Supporting Appellant.

---

**No. 19–1094**

---

COMMON CAUSE; NORTH CAROLINA DEMOCRATIC PARTY; PAULA ANN CHAPMAN; HOWARD DUBOSE; GEORGE DAVID GAUCK; JAMES MACKIN NESBIT; DWIGHT JORDAN; JOSEPH THOMAS GATES; MARK S. PETERS; PAMELA MORTON; VIRGINIA WALTERS BRIEN; JOHN MARK TURNER; LEON CHARLES SCHALLER; REBECCA HARPER; LESLEY BROOK WISCHMANN; DAVID DWIGHT BROWN; AMY CLARE OSEROFF; KRISTIN PARKER JACKSON; JOHN BALLA; REBECCA JOHNSON; AARON WOLFF; KAREN SUE HOLBROOK; KATHLEEN BARNES; ANN MCCRACKEN; JACKSON THOMAS DUNN, JR.; ALYCE MACHAK; WILLIAM SERVICE; DONALD RUMPH; NANCY BRADLEY; VINOD THOMAS; DERRICK MILLER; ELECTA E. PERSON; DEBORAH ANDERSON SMITH; ROSALYN SLOAN; JULIE ANN FREY; LILY NICOLE QUICK; JOSHUA BROWN; CARLTON E. CAMPBELL, SR.; STEPHEN DOUGLAS MCGRIGOR,

                    Plaintiffs – Appellants,

2

and

MARY ANN PEDEN-COVIELLO,

       Plaintiff,

      v.

REPRESENTATIVE DAVID R. LEWIS, in his official capacity as Senior Chairman of the House Select Committee on Redistricting; SENATOR RALPH E, HISE, JR., in his official capacity as Chairman of the Senate Committee on Redistricting; SPEAKER OF THE HOUSE TIMOTHY K. MOORE; PRESIDENT PRO TEMPORE OF THE NORTH CAROLINA SENATE PHILIP E. BERGER; THE STATE OF NORTH CAROLINA,

       Defendants – Appellees,

      and

ANDY PENRY, Chairman of the North Carolina State Board of Elections and Ethics Enforcement; JOSHUA MALCOLM, Vice-Chair of the North Carolina State Board of Elections and Ethics Enforcement; KEN RAYMOND, Secretary of the North Carolina Board of Elections and Ethics Enforcement; STELLA ANDERSON, Member of the North Carolina State Board of Elections and Ethics Enforcement; THE NORTH CAROLINA STATE BOARD OF ELECTIONS AND ETHICS ENFORCEMENT; DAMON CIRCOSTA, Member of the North Carolina State Board of Elections and Ethics Enforcement; STACY "FOUR" EGGERS, IV, Member of the North Carolina State Board of Elections and Ethics Enforcement; JAY HEMPHILL, Member of the North Carolina State Board of Elections and Ethics Enforcement; VALERIE JOHNSON, Member of the North Carolina State Board of Elections and Ethics Enforcement; JOHN LEWIS, Member of the North Carolina State Board of Elections and Ethics Enforcement; ROBERT CORDLE, Member of the North Carolina State Board of Elections and Ethics Enforcement,

       Defendants.

------------------------------

REGINALD REID,

       Amicus Supporting Appellees.

3

————————————

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. Louise W. Flanagan, District Judge. (5:18–cv–00589–FL)

————————————

Argued: January 31, 2020                    Decided: April 16, 2020

————————————

Before GREGORY, Chief Judge, MOTZ, and RICHARDSON, Circuit Judges.

————————————

Affirmed by published opinion. Chief Judge Gregory wrote the opinion, in which Judge Motz and Judge Richardson joined.

————————————

**ARGUED:** Richard Bryan Raile, BAKER & HOSTETLER, LLP, Washington, D.C., for Appellants/Cross-Appellees. Elisabeth S. Theodore, ARNOLD & PORTER KAYE SCHOLER LLP, Washington, D.C., for Appellees/Cross-Appellants. Paul Mason Cox, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Phillip J. Strach, Michael McKnight, OGLETREE, DEAKINS, NASH, SMOAK, & STEWART, P.C., Raleigh, North Carolina; E. Mark Braden, Trevor M. Stanley, BAKER & HOSTETLER LLP, Washington, D.C., for Appellants/ Cross-Appellees. Edwin M. Speas, Jr., Caroline P. Mackie, POYNER SPRUILL LLP, Raleigh, North Carolina; R. Stanton Jones, David P. Gersch, Daniel F. Jacobson, William C. Perdue, Sara Murphy D'Amico, ARNOLD & PORTER KAYE SCHOLER LLP, Washington, D.C.; Marc E. Elias, Aria C. Branch, Washington, D.C., Abha Khanna, PERKINS COIE LLP, Seattle, Washington, for Appellees/Cross-Appellants. Jason B. Torchinsky, Dennis W. Polio, HOLTZMAN VOGEL JOSEFIAK TORCHINSKY PLLC, Warrenton, Virginia, for Amicus Reginald Reid.

————————————

4

GREGORY, Chief Judge:

The core of the two appeals before us concerns whether a partisan gerrymandering action, with claims brought exclusively under the North Carolina Constitution against certain state legislators, belongs in federal court and therefore was properly removed under the Refusal Clause of 28 U.S.C. § 1443(2).  To support their removal, the legislators claimed, among other reasons, that they possess an enforcement role with respect to state laws.  We disagree and conclude that they have failed to explain why they are enforcement officers.  Given Plaintiffs' sole reliance on state law and the court's duty to narrowly construe removal statutes against removal, we affirm the district court's remand order.  Because the legislators removed within the statutorily mandated time limit and adhered to the district court's expedited briefing schedule, we conclude that the district court did not abuse its discretion in declining to award fees and costs and also affirm the cross-appeal.

I.

On November 13, 2018, Common Cause, the North Carolina Democratic Party, and 38 individual voters in North Carolina (collectively, "Plaintiffs") commenced this action in state court, asserting redistricting plans enacted by the North Carolina General Assembly in 2017 (the "2017 Plans") are unconstitutional partisan gerrymanders under the North Carolina Constitution.  In an amended complaint filed on December 7, 2018, Plaintiffs named as Defendants President Pro Tempore of the Senate Philip Berger, Chairman of the Senate Standing Committee on Redistricting Ralph Hise, Jr., Senior Chairman of the House Select Committee on Redistricting David Lewis, and Speaker of the House Timothy K.

5

Moore (collectively, the "Legislative Defendants").  Plaintiffs also named as Defendants the State of North Carolina,[1] the State Board of Elections and Ethics Enforcement, and individual officers and members of the State Board of Elections and Ethics Enforcement (collectively, the "State Defendants").

In their amended complaint, Plaintiffs brought three claims exclusively under the North Carolina Constitution.  In their first claim, Plaintiffs alleged that the 2017 Plans violate the Equal Protection Clause, N.C. Const. art. I, § 19, because the plans intentionally and impermissibly classified voters into districts on the basis of the voters' political affiliations and viewpoints.  According to Plaintiffs, the "intent and effect of these classifications [was] to dilute the voting power of Democratic voters," making it more difficult for Democratic candidates to be elected across the state and rendering it "virtually impossible" to achieve a majority in the North Carolina General Assembly.  J.A. 401.  In their second claim, Plaintiffs alleged that the 2017 Plans also violated the Free Elections Clause, N.C. Const. art. I, § 5, because they denied voters an equal opportunity to translate their votes into representation.  In their final claim, Plaintiffs alleged that the plans violated the Freedom of Speech and Freedom of Assembly Clauses, N.C. Const. art. I, §§ 12, 14, because the plans, among other effects, burdened protected speech and conduct based on viewpoint by making such speech and conduct less effective.

---

[1] On February 13, 2019, Plaintiffs voluntarily dismissed the State of North Carolina to avoid disputes over who may properly represent it.

6

As relief from the North Carolina state court, Plaintiffs sought to (1) "[d]eclare that each of the 2017 Plans is unconstitutional and invalid because each violates the rights of Plaintiffs and all Democratic voters in North Carolina under the North Carolina Constitution's Equal Protection Clause; Free Elections Clause; and Freedom of Speech and Freedom of Assembly Clauses"; (2) "[e]njoin Defendants, their agents, officers, and employees from administering, preparing for, or moving forward with the 2020 primary and general elections for the North Carolina General Assembly using the 2017 Plans"; (3) "[e]stablish new state House and state Senate districting plans that comply with the North Carolina Constitution, if the North Carolina General Assembly fails to enact new state House and state Senate districting plans comporting with the North Carolina Constitution in a timely manner"; and (4) "[g]rant Plaintiffs such other and further relief as the Court deems just and appropriate." J.A. 408.

On December 14, 2018, the Legislative Defendants timely removed the action to the United States District Court for the Eastern District of North Carolina, relying on 28 U.S.C. §§ 1441(a) and 1443 as alternative bases for removal.[2]  Before continuing, a brief

---

[2] The notice of removal, signed by counsel for the Legislative Defendants, stated it was also filed on behalf of the State of North Carolina even though the North Carolina Attorney General's Office had accepted service more than 30 days before removal and the Attorney General did not consent to removal.  The Legislative Defendants stated that pursuant to Section 1-72.2 of the North Carolina General Statute, the "legislative branch of North Carolina state government is considered the 'State of North Carolina' in actions challenging statutes enacted by the North Carolina General Assembly along with the executive branch of state government." J.A. 42 (citing N.C. Gen. Stat. § 1-72.2); *see also* N.C. Gen. Stat. § 1-72.2(a) ("[I]n any action in any North Carolina State court in which the validity or constitutionality of an act of the General Assembly or a provision of the North Carolina Constitution is challenged, . . . both the General Assembly and the Governor (Continued)

7

introduction to the two bases for removal is beneficial.  Under § 1441, the general removal statute, a "civil action brought in a State court of which the district courts of the United States have original jurisdiction" may be removed by the defendants "to the district court of the United States for the district and division embracing the place where such action is pending."  *Id.* § 1441(a).  Removal may also be proper if another particular removal provision applies, such as the Refusal Clause of § 1443(2), which confers removal privileges on a defendant when that defendant is prosecuted "for refusing to do any act on the ground that it would be inconsistent with [equal-rights] law."  *Id.*

In this action, the Legislative Defendants asserted two bases for removal.  First, citing § 1441(a), the Legislative Defendants argued that Plaintiffs' claims raised federal questions and were necessarily dependent on the resolution of substantial questions of federal law.  Second, the Legislative Defendants asserted that, under § 1443(2), conflicts existed between Plaintiffs' state-law theories and federal equal-rights laws as well as the U.S. Constitution.  As one example, Plaintiffs' challenged districts were previously mandated for use in future elections by the court in *Covington v. North Carolina*, 283 F. Supp. 3d 410, 458 (M.D.N.C. 2018).[3]  The Legislative Defendants alleged that compliance

---

constitute the State of North Carolina.").  Because Plaintiffs later voluntarily dismissed the State of North Carolina and because the Governor of North Carolina was not named as a defendant, we need not dwell on the procedural propriety of removal.

[3] The *Covington* action, which involved a challenge to redistricting plans enacted by the General Assembly in 2011 as unconstitutional *racial* gerrymanders under federal law, has a long history that we need not recite here.  *See, e.g.*, *Covington v. North Carolina*, 316 F.R.D. 117, 124 (M.D.N.C. 2016) (invalidating 28 challenged districts and concluding that the General Assembly "failed to demonstrate that their predominant use of race was (Continued)

with any remedy Plaintiffs obtained in this action would necessarily conflict with *Covington*'s mandate. As another example, Plaintiffs' desired remedies would separately create a conflict between state constitutional redistricting requirements and the Voting Rights Act and the Equal Protection Clause, given the close correlation between race and political affiliation in North Carolina.

On December 17, 2018, three days after removal, Plaintiffs filed an emergency motion to remand. Plaintiffs argued that removal was improper under §§ 1441(a) and 1443(2), representations made by the Legislative Defendants in the *Covington* litigation estopped them from now seeking removal, and North Carolina's sovereign immunity barred federal adjudication of the various state-law claims. In the remand motion, Plaintiffs also requested attorneys' fees and costs under 28 U.S.C. § 1447(c).

On December 28, 2018, the State Defendants responded to the remand motion and agreed with Plaintiffs that this action should be remanded to state court.[4] On the same day,

---

reasonably necessary to further a compelling state interest"), *aff'd* 137 S. Ct. 2211 (2017); *Covington v. North Carolina*, 267 F. Supp. 3d 664, 667 (M.D.N.C. 2017) (ordering the General Assembly to enact new districts that would "cure the unconstitutional racial gerrymanders in the 2011 districting plans"); *Covington v. North Carolina*, 283 F. Supp. 3d 410, 446–47 (M.D.N.C. 2018) (approving court-appointed special master's redistricting plans, sustaining objections made under the North Carolina's ban on mid-decade redistricting, and declining to address the objection whether "the 2017 Plans are unconstitutional partisan gerrymanders"), *affirming in part and reversing in part*, 138 S. Ct. 2548, 2555 (2018) (affirming the approval of the special master's plans and noting that "[o]nce the District Court had ensured that the racial gerrymanders at issue in this case were remedied, its proper role in North Carolina's legislative districting process was at an end").

[4] The response, filed by the North Carolina Department of Justice, also objected to the removal on behalf of the State of North Carolina and "reserve[d] the right to challenge, (Continued)

9

the Legislative Defendants also filed a response, arguing that removal was proper under §§ 1441(a) and 1443(2), judicial estoppel did not apply, this action was not barred by sovereign immunity, and Plaintiffs' demand for fees and costs was itself frivolous.

On January 2, 2019, the district court granted in part and denied in part Plaintiffs' motion to remand. The memorandum opinion was issued five days later on January 7. *See generally Common Cause v. Lewis*, 358 F. Supp. 3d 505 (E.D.N.C. 2019). As to § 1441(a), the district court reasoned that the premise of the Legislative Defendants' argument was flawed because federal law was not an affirmative element of Plaintiffs' state-law claims. As to the Refusal Clause of § 1443(2), the district court explained the Legislative Defendants' right to remove was "doubtful" for three independent reasons: (1) the action was not brought against the Legislative Defendants for "refusing to do" anything because the General Assembly had already completed drawing districts under the 2017 Plans; (2) the Refusal Clause was intended to apply to state officers who refused to *enforce* state laws, not to the Legislative Defendants who have only a *legislative* role; and (3) any suggestion that Plaintiffs' attempt to enforce various provisions of the North Carolina Constitution would run afoul of federal voting law and U.S. Constitution was "speculative."[5] *Id.* at 510–11. Because doubts must be resolved in favor of remand and

in an appropriate setting, the interpretation of [N.C. Gen. Stat.] § 1-72.2 that the Legislative Defendants appear to be advancing." J.A. 463. The response then stated, however, that the district court "need not address those unsettled state-law issues . . . [and] [t]he remand motion presents multiple grounds for remand that do not depend on who represents the State in a lawsuit like this one." *Id.*

[5] Having reached these conclusions, the district court noted that it did not need to reach the Legislative Defendants' arguments relating to estoppel and sovereign immunity.

10

the Legislative Defendants' arguments were insufficient to overcome this doubt, the district court granted Plaintiffs' remand motion. The district court also denied Plaintiffs' request for fees and costs under § 1447(c), concluding that the Legislative Defendants had an objectively reasonable—though ultimately unpersuasive—basis for seeking removal.

Two timely appeals followed. The Legislative Defendants appealed the remand order, and Plaintiffs cross-appealed the district court's denial of fees and costs.

## II.

"We review de novo issues of subject matter jurisdiction, including removal." *Ripley v. Foster Wheeler LLC*, 841 F.3d 207, 209 (4th Cir. 2016). "Because removal jurisdiction raises significant federalism concerns, we must strictly construe removal jurisdiction." *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994). "If federal jurisdiction is doubtful, a remand is necessary." *Id.*; *see Palisades Collections LLC v. Shorts*, 552 F.3d 327, 336 (4th Cir. 2008) (recognizing the "duty to construe removal jurisdiction strictly and resolve doubts in favor of remand").

We review for abuse of discretion a denial of fees and costs under § 1447(c). *In re Lowe*, 102 F.3d 731, 733 n.2 (4th Cir. 1996).

## III.

Two appeals are before us. For their part, the Legislative Defendants take issue with the district court's conclusion that the Refusal Clause of § 1443(2) does not authorize

removal of this action.[6]  And for their part, Plaintiffs argue that the district court abused its

discretion in denying fees and costs under § 1447(c).  We address each appeal in turn.

A.

We begin with the Refusal Clause of § 1443(2).  In its entirety, § 1443 provides as

follows:

> Any of the following civil actions or criminal prosecutions, commenced in a State court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending:
>
> (1) Against any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof;
>
> (2) For any act under color of authority derived from any law providing for equal rights, *or for refusing to do any act on the ground that it would be inconsistent with such law.*

*Id.* (emphasis added).  Section 1443(2), in particular, consists of two distinct clauses.  First,

the "color of authority" clause, not relevant here, permits removal when a defendant is

prosecuted "[f]or any act under color of authority derived from any law providing for equal

rights."  *Id.*; *see City of Greenwood, Miss. v. Peacock*, 384 U.S. 808, 815 (1966) (holding

---

[6] The Legislative Defendants correctly note that we lack appellate jurisdiction over an order remanding an action removed under § 1441(a) and focus on the propriety of removal under § 1443(a).  *See* 28 U.S.C. § 1447(d); *Mayor and City Council of Baltimore v. BP P.L.C.*, 952 F.3d 452, 461 (4th Cir. 2020) (concluding "appellate courts only have jurisdiction to review those grounds for removal that are specifically enumerated in § 1447(d)," which are §§ 1442 and 1443).  Though they also argue that Plaintiffs' other defenses to removal—judicial estoppel and sovereign immunity—were meritless, the district court declined to reach these issues and we need not address them to resolve these appeals.  *See Lovelace v. Lee*, 472 F.3d 174, 203 (4th Cir. 2006) (emphasizing that we are "a court of review, not of first view" (internal quotation marks omitted)).

12

that the "color of authority" clause "confers a privilege of removal only upon federal officers or agents . . . in affirmatively executing duties under any federal law providing for equal rights"). Second, the Refusal Clause, at issue in this appeal, permits removal when a defendant is prosecuted "for refusing to do any act on the ground that it would be inconsistent with such [equal-rights] law." § 1443(2).

We have described § 1443 as a statute of "exquisite obscurity." *Baines v. City of Danville, Va.*, 357 F.2d 756, 759 (4th Cir. 1966) (en banc) (citation and internal quotation marks omitted). Because the language in § 1443 is "derived from the Civil Rights Act of 1866," both the Supreme Court and our Court, in two separate instances in 1966, have examined that statute in order to better understand § 1443 more generally and the Refusal Clause more specifically. *See id.*; *Peacock*, 384 U.S. at 808.

In *Baines*, the defendants alleged they were criminally prosecuted for demonstrating in protest against customs and practices perpetuating racial segregation. *Id.* at 758. The defendants were then charged in state court for violating an injunctive order that proscribed, among other activities, participating in mob violence, rioting, assembling, and obstructing traffic. *Id.* In removing their criminal prosecutions under the Refusal Clause, the defendants claimed that the injunction was unconstitutional for criminalizing protected conduct and was in violation of their civil rights. *Id.* at 758, 772 (noting defendants "refused to desist from their demonstrations on the ground that it was protected conduct"). And in affirming the district court's remand, we "closely examine[d]" the Refusal Clause's antecedent, the Civil Rights Act of 1866, and explained as follows:

13

> The refusal language was added by amendment in the House with the explanation that it was intended to enable state officers who *refused to enforce* discriminatory state laws in conflict with Section 1 of the Civil Rights Act of 1866 and who were prosecuted in the state courts because of their refusal to enforce state law, to remove their proceedings to the federal court.

*Id.* at 759, 772 (emphasis added) (affirming remand since the Refusal Clause "is available only to state officers").

Later that year, in *Peacock*, the Supreme Court agreed with our conclusion in *Baines*. There, the Supreme Court also examined the Civil Rights Act of 1866 and explained that "[i]t is clear that removal under [the Refusal Clause] is available to only state officers." *Peacock*, 384 U.S. at 824 n.22. The Supreme Court continued to note that, in reporting the amendment to include the Refusal Clause, the chairman of the House Judiciary Committee commented, "I will state that this amendment is intended to enable State officers, who shall *refuse to enforce State laws* discriminating in reference to (the rights created by § 1 of the bill) on account of race or color, to remove their cases to the United States courts when prosecuted for refusing to *enforce those laws*." *Id.* (citing Cong. Globe, 39th Cong., 1st Sess., 1367) (emphasis added).

Since *Baines* and *Peacock*, neither the Supreme Court nor our Court have provided further guidance on the Refusal Clause, leaving unanswered the question of whether partisan gerrymandering actions may proceed in federal court after removal under that clause. Not surprisingly, district courts have reached conflicting conclusions on this question, with the majority of them rejecting federal jurisdiction. *Compare Cavanagh v. Brock*, 577 F. Supp. 176, 179–80 (E.D.N.C. 1983) (holding that action seeking to restrain

14

North Carolina from "implementing the reapportionment plans as precleared" was properly removed under the Refusal Clause), *with, e.g.*, *Stephenson v. Bartlett*, 180 F. Supp. 2d 779 (E.D.N.C. 2001) (holding that state action challenging precleared redistricting plans was not properly removed under the Refusal Clause); *Brown v. Florida*, 208 F. Supp. 2d 1344 (S.D. Fla. 2002) (same); *Wolpoff v. Cuomo*, 792 F. Supp. 964 (S.D.N.Y. 1992) (same).

Against this legal backdrop, the Legislative Defendants insist that removal of this action is undeniably proper for three reasons. First, they possess an enforcement role and are therefore capable of violating equal-rights laws. Second, they have affirmatively refused to enact or administer Plaintiffs' preferred redistricting plans, *i.e.*, a refusal to act within the meaning of the Refusal Clause. And third, they have asserted colorable conflicts between Plaintiffs' state-law theories and federal equal-rights laws, namely, that if Plaintiffs were to prevail, compliance with their preferred relief would be in conflict with the *Covington* rulings, Voting Rights Act, and Fourteenth and Fifteenth Amendments of the U.S. Constitution.

We first consider the Legislative Defendants' assertion that they possess an enforcement role and are therefore capable of violating equal-rights laws. In their view, they qualify as defendants capable of violating "equal-rights" laws because the Refusal Clause does not distinguish between executive and legislative actors. It does not matter, then, that they generally have a legislative role, as opposed to an enforcement role.

As noted above, the Supreme Court, in reviewing the Refusal clause, explained that it is "clear that removal . . . is available only to state officers," with the legislative history indicating that this clause applies to officers "who shall refuse *to enforce* State laws." *See*

15

*Peacock*, 384 U.S. at 824 n.22 (citing Cong. Globe, 39th Cong., 1st Sess., 1367) (emphasis added).  We are in accord.  *Baines*, 357 F.2d at 772 ("The refusal language . . . was intended to enable state officers who refused *to enforce* discriminatory state laws . . . .") (emphasis added).  Thus, in order for the Legislative Defendants to remove this action, it must not be in doubt that they have the authority to *enforce* discriminatory state laws.  *See Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994) ("If federal jurisdiction is doubtful, a remand is necessary.").

But the Legislative Defendants, four individual North Carolina legislators, do not enforce state laws to fall within the purview of the Refusal Clause.  In *Wright v. North Carolina*, which involved a challenge to a state law redrawing local electoral districts, we held that the "North Carolina Constitution clearly assigns the enforcement of laws to the executive branch."  787 F.3d 256, 262 (4th Cir. 2015) (citing N.C. Const. art. III, § 5).  "The General Assembly retains no ability to enforce any of the laws it passes," and the proposed defendants, like the ones here, "are merely members of North Carolina's General Assembly."  *Id.* ("[A]s is the case with all election plans in North Carolina, the county Board of Elections, in cooperation with the State Board of Elections [*i.e.*, the State Defendants], has the specific duty to enforce the challenged redistricting plan.") (citing N.C. Gen. Stat. §§ 163–22, 16–33).

Notwithstanding our holdings in *Wright* and *Baines* and the Supreme Court's holding in *Peacock*, the Legislative Defendants maintain that the Refusal Clause does not distinguish between executive and legislative actors.  That is so, the Legislative Defendants say, because these precedents do not speak to distinctions between and among officers

16

*within* the state governments.  And although some language in *Baines* references state

officers' "refusal to enforce state law," 357 F.2d at 772, the Legislative Defendants contend

that such "loose verbiage does not control."  Opening Br. at 30.

Once more, we disagree.  We cannot disregard either our prior precedents or the

Supreme Court's guidance, and, when considered collectively, they clarify that the Refusal

Clause is unavailable to state legislators because they do not enforce state laws.  Instead,

the Refusal Clause authorizes removal only where the defendant is sued "for refusing to do

any act," § 1443(2), or where the alleged unlawful conduct from which a plaintiff seeks

relief is an affirmative refusal to enforce state laws.  It is those executive officials charged

with enforcing state laws that may be sued for their wrongful or unconstitutional refusal.

*See Wolpoff*, 792 F. Supp. at 965–68 (concluding "the refusal clause contained in 28 U.S.C.

§ 1443(2) is not available to legislators who are sued under state law" where the plaintiffs

"asserted that the legislative defendants violated the New York State Constitution when

the legislative defendants passed a New York State Senate districting plan").

Further, the Legislative Defendants do not point to a single case where *state*

*legislators* successfully removed under the Refusal Clause a challenge to an enactment of

state redistricting maps or law.  The weight of authority is indeed to the contrary.[7]  *See,*

---

[7] Perhaps recognizing the weakness of their argument, the Legislative Defendants separately contend numerous other legislative officers or entities analogous to them, such as school boards or city councils, have successfully removed under the Refusal Clause state-law challenges to school desegregation cases.  But those removals, unlike here, concerned local legislative officers or entities who possessed, but refused to exercise, specific *enforcement* authority.  *See, e.g.*, *Burns v. Bd. of Sch. Comm'rs of City of Indianapolis, Ind.*, 302 F. Supp. 309, 311–12 (S.D. Ind. 1969) (holding "the privilege of (Continued)

*e.g.*, *Cavanagh*, 577 F. Supp. at 178–79 (permitting removal where the parties being sued were *non-legislative* election officials who were required to "enforce" the legislature's districting plan); *Alonzo v. City of Corpus Christi*, 68 F.3d 944, 946 (5th Cir. 1995) (permitting removal where the plaintiffs challenges "the City's *use* of [the 5-3-1 system] in its elections") (emphasis added).

In sum, we conclude the Legislative Defendants do not have an enforcement role within the meaning of the Refusal Clause.[8]  Having reached this conclusion, we need not address whether the Legislative Defendants refused to act or whether they asserted a colorable conflict with federal law.  The district court did not err in remanding this action.[9]

---

removal is conferred . . . by [the Refusal Clause] only upon state officers who *refused to enforce* state laws discriminating on account of race or color") (emphasis added).

[8] After the parties finished their appellate briefing, the Supreme Court issued *Rucho v. Common Cause*, 139 S. Ct. 2484 (2019), which similarly involved a group of North Carolina voters challenging the state's congressional districting maps as unconstitutional partisan gerrymanders under the U.S. Constitution.  The Supreme Court held that those "partisan gerrymandering claims present political questions beyond the reach of the federal courts," *i.e.*, non-justiciable under the political question doctrine.  *Id.* at 2506–07.  Our rulings today do not depend on *Rucho* since those plaintiffs' claims were brought under the U.S. Constitution instead of the North Carolina Constitution.

[9] Plaintiffs also filed a motion to dismiss the appeal as moot, requesting that we dismiss the Legislative Defendants' appeal without vacating the district court's order.  In addition, the State Defendants noted at oral argument that, though absent from the appellate record, over 9,000 ballots had already been sent out for primary voting, hundreds of votes had been returned, and early voting was imminent.  Oral Arg. at 33:30–34:39, available at http://www.ca4.uscourts.gov/OAarchive/mp3/19-1091-20200131.mp3.  Since we face two jurisdictional issues, removal and mootness, we need not address mootness (*i.e.*, rule on the motion to dismiss) in light of our conclusions on removal.

18

B.

We turn to Plaintiffs' cross-appeal of the district court's denial of fees and costs. Under § 1447(c), "[a]n order remanding the case *may* require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." *Id.* (emphasis added). "There is no automatic entitlement to an award of attorney's fees." *Beusterien v. Icon Clinical Research, Inc.*, 517 F. App'x 198, 199 (4th Cir. 2013) (per curiam) (citation omitted). Instead, the Supreme Court has instructed that "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). "Conversely, when an objectively reasonable basis exists, fees should be denied." *Id.* Although the district court retains the discretion to depart in unusual circumstances, its "reasons for departing from the general rule should be faithful to the purposes of awarding fees under § 1447(c)." *Id.* (internal quotation marks omitted); *see id.* at 140 (discussing purposes such as deterring removals sought to prolong litigation and imposing costs on the opposing party).

Notwithstanding these principles, Plaintiffs fault the district court for declining to address every argument in support of remand, including estoppel and sovereign immunity. In Plaintiffs' view, the Legislative Defendants' arguments in support of removal were "patently frivolous," *see* Response Br. at 64, and awarding fees and costs in this instance is necessary to deter future baseless removals aimed at delaying time-sensitive proceedings in state court. The district court, according to Plaintiffs, could not have properly concluded that removal was objectively reasonable and abused its discretion in denying fees and costs.

19

We disagree for several reasons. For starters, the district court recognized that the Legislative Defendants' notice of removal provided detailed arguments and "comprehensively briefed the issues arising from their removal, including with reference to a wide range of case law." *Common Cause*, 358 F. Supp. 3d at 515. Within our Circuit, indeed within North Carolina, there is precedent for a defendant to remove redistricting litigation to federal court under the Refusal Clause of § 1443(2). *See Cavanagh*, 577 F. Supp. at 180 ("Confirming our earlier orders granting defendants' petition for removal and refusing remand, we hold that this case is one properly removed under § 1443(2)."). Far from taking a patently frivolous position, the Legislative Defendants had an objectively reasonable—though weak and ultimately unsuccessful—basis for seeking removal. And in remanding the action, the district court did not need to reach every argument Plaintiffs presented in order to reject the Legislative Defendants' reasoning for removal.

Moreover, contrary to any suggestion that they attempted to remove this action in order to delay and interrupt this time-sensitive action, the Legislative Defendants acted within the statutorily required time limits for removal and strictly adhered to the district court's expedited briefing schedule on Plaintiffs' remand motion. *See* 28 U.S.C § 1446(b). The district court also acknowledged the Legislative Defendants' statutory right to remove and adherence to the "court's order for expedited briefing on [P]laintiffs' motion to remand," *see Common Cause*, 358 F. Supp. 3d. at 515, again indicating the reasonableness of the court's exercise of discretion in denying fees and costs. To conclude otherwise, and therefore holding that the district court abused its discretion, would be inconsistent with relevant precedents. *See Martin*, 546 U.S. at 136 (rejecting the argument that "attorney's

20

fees should be awarded automatically on remand, or that there should at least be a strong presumption in favor of awarding fees").

For these reasons, we conclude that the district court did not abuse its discretion in declining to award fees and costs.

IV.

For the foregoing reasons, we affirm the district court's order granting Plaintiffs' motion to remand and denying Plaintiffs' costs and fees.

*AFFIRMED*

21